TERRENCE WENDL et al., Plaintiffs-Appellees, v. MOLINE POLICE PENSION BOARD, Defendant-Appellant.

Third District    Nos. 80-534, 535 cons.

Opinion filed May 28, 1981.

Marshall E. Douglas, of Jackson, Douglas, DePorter & Schmidt, of East Moline, for appellant.

Dennis A. DePorter and Anthony Jamison, both of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The Moline Police Pension Board (hereinafter Pension Board or Board) appeals from the judgment of the Circuit Court of Rock Island County in this administrative review action. The Board had ordered the termination of each plaintiff's disability pension, after hearing, and the circuit court reversed those orders and remanded the cases back to the Board. The basis for the reversal was the circuit court's finding that the plaintiffs had not received constitutionally adequate notice concerning the hearing, based upon applicable due process requirements. The court reinstated the pensions which had been terminated, on that basis, and it remanded so that proper notice could be given prior to any further proceedings by the Pension Board. The Pension Board argues on appeal that

the notice of hearing given by it to the plaintiffs was sufficient to meet due process requirements in this case. Secondly, the Board argues that the reinstatement of the pensions was unwarranted, even assuming that the reversal was proper for inadequate notice. We affirm the decision in its entirety.

The record discloses the following facts pertinent to the issues on appeal. Plaintiffs Terrence Wendl and Randall Heaton had been police officers with the city of Moline. Heaton was injured in September 1974, while a police officer, and he was granted a full disability pension by the Pension Board in December 1974. Wendl was placed on full disability pension by the Board in March 1976. They continued to receive their pension benefits in the years following, although each at times was employed elsewhere during the ensuing years. Then, in 1979, the Pension Board sent a letter to each plaintiff, dated May 3, 1979. The letter stated that the Board would be annually reviewing the disability pensions, and it directed the plaintiffs-pensioners to obtain certificates concerning their physical conditions from the police physician. The letter also directed each man to appear before the Pension Board for the review. Two alternate dates for the "meeting" were offered, and the pensioners were permitted to choose either date to appear. The letter was signed by the secretary of the Pension Board, James Cunningham. On October 25, 1979, each plaintiff appeared for the hearing to review his disability pension. Neither man was represented by counsel at his hearing. At his hearing, Wendl was first questioned by the Pension Board's attorney and then by members of the Board. No other witnesses testified, nor were any exhibits introduced. Plaintiff Heaton's hearing was similar, questions from the Board's attorney and then Board members. Subsequent to the hearings, the Pension Board entered its orders terminating each man's disability pension. There is no need to set forth the substance of the evidence, or the basis of the Board's order, as there is no issue raised on this appeal at this stage of the proceeding as to the correctness of the Board's decision on the merits. The circuit court, in finding a lack of adequate notice, did not reach any issue concerning the merits of the terminations.

Following notice by the Board to plaintiffs that their pensions were to be terminated effective December 1, 1979, each man filed a complaint for administrative review of the Board's actions, pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) Each complaint requested review over the Pension Board's action in terminating the pension, and each alleged that the decision of the Board was contrary to the law and to the manifest weight of the evidence. Each complaint also alleged that the Board had failed to observe the rules of evidence and its own rules (see Ill. Rev. Stat. 1979, ch. 108½, par. 2—140)

in arriving at its decision. The complaints sought reversals of the decision, and, also, each prayed that the decision to terminate be stayed, that the case be remanded for taking further evidence, and for any relief the court thought appropriate.

Thereafter, the defendant Pension Board filed answers in both cases. Each plaintiff then filed a "Petition to Stay Proceedings," accompanied by affidavit. In his petition, Mr. Wendl alleges that in the years prior to 1979, the Board had only required him to submit a letter from a physician on his then current physical condition. He alleged that he had annually done so, as requested. Wendl also alleges that he received a May 3 notice letter from the Board requiring him to appear to be examined by the police physician. The petition asserted that the notice letter of May 3 did not advise him: (1) that the Board would be considering termination of his pension; (2) that he would be entitled to present his own medical evidence; (3) that he could have witnesses produced and, also, cross-examine other witnesses; (4) that he could be represented by counsel at the hearing; and (5) that he would be permitted to contest the findings of the police physician.

The petition concluded by alleging that because of the lack of adequate notice, plaintiff Wendl had been denied due process and a fair hearing. An affidavit was filed in support of the allegations in the petition. A similar petition to stay was filed by plaintiff Heaton which alleged, in essence, that he was not properly advised concerning the hearing by the notice of May 3. Heaton, as Wendl, asserted his property interests in the pension and alleged that his interest had been taken from him without requisite due process protections. In his accompanying affidavit, Heaton recounted his accident, his disability, and his subsequent employment history. He also stated that from 1976 until 1979 he was asked by the Board to submit a letter from his physician concerning his condition. He submitted these letters annually, as requested, and these were all the Board required.

He acknowledged receipt of the May 3 notice letter from the Board. He stated, however, that at no time was he informed that he should be represented by counsel at the hearing. He stated furthermore that he did not understand that the hearing was an adversary proceeding at which evidence against him would be produced and elicited. He also stated that he was unaware of the procedural steps to be taken during the hearing and that he was inadequately prepared for the hearing. He alleges this to be a consequence of the lack of notice afforded him concerning the nature and purposes of the hearing. He stated that no evidentiary hearing had ever previously been conducted. Finally, in his affidavit, Heaton stated that upon receipt of the May 3 letter, he was informed by James

Cunningham, secretary of the Board who signed the letter, that the hearing was merely an attempt to bring the Pension Board into compliance with the law.

The circuit court thereafter held a hearing on the plaintiffs' complaints and their petitions. The cases, because of their similarity, were considered together. The court found in favor of the plaintiffs solely on the basis of a denial of due process as a result of the inadequacy of the notice of May 3, 1979. The orders of the court found that the notice of May 3 "was not adequate to notify the plaintiff of the nature and scope of the subsequent hearing." The court, in deciding the case on this ground, did not reach the merits. It did order a reinstatement of the improperly terminated pensions benefits and remandment for new hearings after new and sufficient notice. From these decisions the Pension Board appeals.

■■ ■ It is firmly established that administrative proceedings must conform to the constitutional requirements of due process of law. (*Bruce v. Department of Registration & Education* (1963), 26 Ill. 2d 612, 187 N.E.2d 711; *Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 393 N.E.2d 638; *Distaola v. Department of Registration & Education* (1979), 72 Ill. App. 3d 977, 391 N.E.2d 489.) While the essence of procedural due process is meaningful notice and meaningful opportunity to be heard (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652; *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561, 224 N.E.2d 236), due process is a flexible concept and specific procedural requirements with respect to notice and opportunity to be heard vary, depending upon the character of the rights affected and the degree of deprivation. *Pipe Trades, Inc. v. Rauch* (1954), 2 Ill. 2d 278, 118 N.E.2d 319; *Elmhurst Stamping & Manufacturing Co. v. Amax Plating, Inc.* (1978), 67 Ill. App. 3d 257, 384 N.E.2d 839; *Kraut v. Rachford* (1977), 51 Ill. App. 3d 206, 366 N.E.2d 497.

In the instant case, the rights affected are the plaintiffs' property interests in their disability pension benefits, which they have been receiving for a number of years, and the degree of deprivation of those interests is total, for it is termination of any benefits which was ordered. Both Wendl and Heaton had been receiving disability pension benefits since the mid-1970's, when both had established their entitlement to pension benefits under the applicable statutory provisions. Ill. Rev. Stat. 1979, ch. 108½, par. 3—101 *et seq*.

■■ While the pension awards were subject to review and potential termination by the Pension Board, nevertheless, until properly terminated, they were present property interests belonging to the plaintiffs. Each plaintiff had a right to continued pension payments, under the statute, so long as the disability was shown to exist. Thus, the interests at stake in the

review proceedings are akin to benefits conferred under the welfare statutes, wherein significant pre-deprivation due process protections have been required before those previously conferred benefits can be terminated. (*Goldberg v. Kelly* (1970), 397 U.S. 254, 261-64, 25 L. Ed. 2d 287, 295-97, 90 S. Ct. 1011, 1017-19.) The benefits in the instant case are thus distinctly different from the interests in other pension cases wherein the only asserted interest was in some future expectancy of pension benefits. Plaintiffs herein had shown their entitlement to the pension benefits, and their interests in those benefits, present and future, are sufficient to require significant due process protection when the State, herein the Pension Board, seeks to deprive the plaintiffs of them. Note that we do not mandate that the hearing must take the form of a judicial or quasi-judicial proceeding. What the Board must do, prior to terminating benefits, is to provide meaningful notice and a meaningful opportunity to be heard.

Perhaps the most essential due process protection is that of adequate notice concerning the actions contemplated. The Board does not contend that it could have terminated the pensions without any notice to the pensioners. If some notice is required, then, at a minimum, it must sufficiently apprise the person affected concerning the nature and purposes of any proceedings. As stated,

"The test of the adequacy of notice is whether it clearly apprises a defendant of the claims to be defended against and whether the defendant, on the basis of the notice given, could anticipate the possible effects of the proceeding." (*Hyon Waste Management Services, Inc. v. City of Chicago* (1977), 53 Ill. App. 3d 1013, 1018, 369 N.E.2d 179, relying upon *Department of Revenue v. Jamb Discount* (1973), 13 Ill. App. 3d 430, 301 N.E.2d 23.)

In *Jamb Discount* the court elaborated as to adequate notice:

"In order to be effectual, notice should be so full and clear as to disclose to persons of ordinary intelligence what is proposed. [Citation.] The test is whether the defendant should have anticipated the effects and orders possible. [Citation.]" (13 Ill. App. 3d 430, 435.)

The parties in the instant case do not dispute that this is the standard to which the Pension Board's notice of May 3 must conform. The circuit court found that the May 3 letter failed to adequately notify the plaintiff pensioners that a potential effect of the hearings was termination of their pensions. We agree. The notice letters received by the plaintiffs Wendl and Heaton informed them that the Pension Board would be reviewing their pensions annually, and that they should obtain a certificate from the police physician on their physical condition. It also required their appear-

ance before the Pension Board for the review. They were each permitted to choose the most convenient of two dates scheduled for the "meetings." The letter was on Pension Board letterhead stationery and in the form of a standard business letter to Mr. Wendl. It was signed, "Sincerely, James Cunningham, Secretary."

■■ The notice in the letters of May 3 was insufficient. There was no indication or suggestion in the notice that a potential effect of their appearance at the pension review meeting would be a decision by the Board to terminate their benefits. Nor was it established, either before the Pension Board or at the circuit court, that the pensioners realized the nature of the proceedings as a result of similar prior appearances before the Pension Board. The contrary is indicated in plaintiffs' affidavits before the circuit court in connection with the petition to stay. Those indicate that the only prior review had been their submission of physician's certificates to the Board annually. The letter merely states that they must submit to a physical and appear before the Board. The letter did not inform them that the Board would be conducting a hearing on their disability. It did not inform them that they would be questioned by the attorney for the Board and by Board members. It did not specify that the Board could, as a result of evidence at the meeting, terminate their pension benefits. There was no clear apprisal to them that they would be expected to affirmatively show their continued disability and continued right to pension benefits. The letter of notice was too vague and general and, as noted, there has been no showing that the general language had been construed and limited by previous actions by the Board with respect to these plaintiffs. Given the language and circumstances, as established at this time by the record, we are unable to conclude that the plaintiff petitioner should have anticipated the effects and orders possible from their appearance before the Pension Board. Notice must be so full and clear as to disclose what is proposed, including the anticipated effects of such administrative action. The letter of notice of May 3 did not meet these standards.

The Pension Board asserts that section 3—115 of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 3—115) is sufficient to apprise the pensioners that their disability pensions may be terminated by the Board's actions. This section states:

> "A disability pension shall not be paid unless there shall be filed with the Board, certificates of the policeman's disability, subscribed and sworn to by the policeman * * *, and by the police surgeon (if there be one) and 3 practicing physicians in the municipality. The Board may require other evidence of disability. Medical examination of a policeman retired for disability shall be

made at least once each year prior to attainment of age 50, as a check of the continuance of disability for service as a policeman. No examination shall be required after such age."

Section 3—116 of the Code, also mentioned by the Board in its constructive notice argument, provides that a policeman whose duty is suspended because of disability may be summoned to appear before the Board and to submit himself to examination as to his fitness for duty. Even assuming, *arguendo*, that these sections were brought to the attention of the pensioners, we would have some difficulty concluding that these sections provided sufficiently specific notice to a pensioner, so that, in a given case, he would understand therefrom that the Board could terminate his benefits. Moreover, neither of these sections was mentioned in the Board's letters of May 3, sent to each plaintiff pensioner. If the Board seeks to rely upon the language of the statutory provisions to uphold the adequacy of its notice, then it is first incumbent upon it to notify the affected parties of the existence and presence of those provisions. This should be done in the body of the notice. The Board strains the confines of reasonable argument when it suggests that we presume plaintiffs know of the application of these sections. To do so, we would have to presume, absent any evidence in support, (1) that the pensioners knew of these statutory provisions, (2) that they knew that termination was possible under them, and (3) that they knew the Board was conducting a meeting in conjunction with its review duties *under the statute* in the meetings mentioned in the May 3 letter. Such presumptions would strip the plaintiffs of any real notice and make a mockery of the due process requirement of adequate notice. We affirm the trial court's determination that the notices sent by the Board to the plaintiffs were inadequate to apprise them of the nature, purposes and potential consequences of the hearings to which they were summoned in the May 3 letters. The notices failed to meet minimum requirements of due process and its standards for adequate notice.

■■ The Pension Board's next argument is that the pensioners waived their due process objection and issue when they failed to raise it before the Board. Such conclusion is unacceptable under the facts and circumstances in this case. If the plaintiffs did not receive constitutionally adequate notice and were, therefore, not properly apprised of the potential consequences of the hearing, they can hardly have been expected to raise a due process objection as to their notice. When a person, because of insufficient notice, is unprepared for administrative action against him by an agency, it would be grossly unfair to penalize him, by application of the waiver doctrine, when he fails to make objection as a result of his lack of preparation. We find application of the waiver doctrine inappropriate in the instant case.

■■ The Board's final argument on appeal is that the court erred in reinstating the disability pensions from the time of terminations by the Board through the time of any new hearings, after proper notice. We find no error in that portion of the lower court's order, and, moreover, no other course available. The trial court properly reversed the Board's decision to terminate, based upon constitutional infirmities with the notices sent pensioners. The Board's action and orders terminating the pension benefits were reversed. So far as the record shows, the pensions should, therefore, continue, as they would have, absent proper termination, until such time as the Pension Board properly terminates them. Contrary to the Board's suggestion, there can be no need for the plaintiffs to repay the pension payments reinstated by the circuit court, at some future time. We fail to see any way that the lack of sufficient notice can be retroactively cured so as to uphold the decisions reached in 1979. Nor do we find basis for retroactive application of any future Board decision. In this case, with the reversal of the Board's decisions, the reinstatement of pension benefits, until they are properly terminated, is a necessary and logical consequence of the circuit court's decisions to reverse.

We affirm the decision of the court reversing the administrative action taken by the Pension Board and, also, the reinstatement order contained therein. On the question of a new hearing, as was ordered by the circuit court, there need be no direction to the Board to hold a new hearing. That decision is for the Board to make, based upon applicable statutory requirements. If such hearing is held, however, the notice concerning said hearing must comport with the views expressed in this opinion.

Affirmed.

STOUDER and BARRY, JJ., concur.