THOMAS N. MOORE, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF THE SANITARY DISTRICT EMPLOYEES' AND TRUSTEES' ANNUITY AND BENEFIT FUND, Defendant-Appellant.

First District (1st Division) No. 86—2011

Opinion filed June 15, 1987.

Odelson & Sterk, Ltd., of Evergreen Park (Mark H. Sterk and Jean M. Roche, of counsel), for appellant.

James P. Chapman & Associates, Ltd., of Chicago (James P. Chapman and Kathleen Hogan Morrison, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The defendant board of trustees of the Sanitary District Employees' and Trustees' Annuity and Benefit Fund (board) appeals the trial court's decision which granted the plaintiff, Thomas N. Moore, a refund of monies he contributed to his pension fund during his 12 years' service at the Metropolitan Sanitary District. The board also appeals the denial of the board's counterclaim for a setoff of its payments to Moore's pension plan prior to Moore's felony conviction. Moore cross-appeals from that portion of the trial court's decision which affirmed the board's decision that Moore's pension benefits terminated automatically upon his felony conviction in United States v. Moore (N.D. Ill. 1985), 85 CR 161. The board in its appeal seeks a reversal of the trial court's orders or at least a reversal and remand regarding the question of whether plaintiff has any refund rights. Moore, on the other hand, in his appeal seeks a reversal of the trial court's decision affirming the termination of his pension benefits and requests reinstatement of his full pension benefits on the ground that he had left government service and had begun receiving his pension before his felony conviction.

Thomas Moore was an employee of the Metropolitan Sanitary District (District) from April 22, 1968, until March 21, 1980, when he retired. Mr. Moore made regular contributions to the pension an-

nuities fund throughout his tenure with the District and was eligible to receive pension benefits when he completed 10 years' service, attained the age of 55 and retired from service. (Ill. Rev. Stat. 1985, ch. 108½, par. 13—134.) Plaintiff argues that his pension rights were, therefore, vested in 1978 when he was 55 years old and had served the District for 10 years. In fact, Mr. Moore received monthly pension annuities from May 1980 through July 1985.

On August 3, 1985, Thomas Moore was found guilty in the United States District Court of a felony in connection with his employment at the District. (United States v. Moore (N.D. Ill. 1985), 85 CR 162.) Mr. Moore filed post-trial motions which were ultimately denied on October 8, 1985. The district court then entered judgment against Moore on his felony conviction and imposed sentence on October 8, 1985.

In a letter dated August 30, 1985, the executive director of the board notified plaintiff that his pension benefits had been terminated at a meeting of the board on August 28, 1985, pursuant to section 13—221 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 13—221). The board did not give plaintiff advance notice of the meeting nor did it give him an opportunity to be heard before his benefits were terminated. On September 25, 1985, Moore filed a complaint in the circuit court seeking administrative review of the board's decision terminating his benefits.

On June 16, 1986, the trial court entered an order affirming the board's decision that had automatically terminated the plaintiff's benefits as of his conviction but ruled that "conviction" occurred as of the date of sentencing and not, as the board had determined, as of the date of the jury's verdict. Accordingly, the court ordered the board to pay plaintiff $1,807.65, which represented the benefits payable to the plaintiff through the date of sentencing, October 8, 1985. However, the trial court denied the plaintiff's further claim that he was entitled to a refund of the monies he had contributed to the pension fund and consequently denied defendant's counterclaim filed in response to plaintiff's claim for a refund, which requested a setoff against any refund for the monies the board had paid the plaintiff through October 8, 1985. The court ruled that the refund issue was not part of the administrative record presented to the court and, hence, could not be considered.

Thereafter, plaintiff filed a motion with the trial court to reconsider its order affirming the board's determination that his pension benefits were automatically terminated under the Pension Code and denying his claim to a refund. On June 24, 1986, the trial court de-

nied plaintiff's motion as it concerned the termination of his pension benefits, but granted a rehearing concerning his right to a refund. The trial court then held that Moore was entitled to a refund of the funds he paid into the pension fund during his tenure with the District and ordered the District to return these monies.

The administrative record here consists only of the board's letter to plaintiff advising him that his pension benefits were terminated, a letter from a consulting actuary dated August 15, 1985, advising the board that it needed to address the issue of plaintiff's refund rights under the statute, and plaintiff's personnel file. However, this record did establish certain uncontradicted facts. There is no question that the plaintiff, Thomas Moore, was convicted of a felony in connection with his employment at the District. It is clear that the relevant portion of the Illinois Pension Code which governs the plaintiff's public employee pension funds and benefits, chapter 108½, section 13—221, provides:

"Felony conviction. None of the benefits provided in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as an employee.

This section shall not operate to impair any contract or vested right heretofore acquired under any law or laws continued in this Article, nor to preclude the right to a refund.

All future entrants entering service subsequent to July 11, 1955 shall be deemed to have consented to the provisions of this section as a condition of coverage." (Ill. Rev. Stat. 1985, ch. 108½, par. 13—221.)

It is also undisputed that there was no hearing provided by the District prior to the termination of plaintiff's pension rights, nor did the board, subsequent to its decision, proffer the plaintiff any opportunity to be heard. The board simply made a unilateral, summary determination of plaintiff's rights, unaccompanied by any factual findings, and terminated plaintiff's pension benefits immediately.

Here it appears that immediately following the guilty verdict in plaintiff's felony trial, the board held a meeting and determined that the statutory provisions of the Pension Code caused an automatic termination of plaintiff's pension benefits as of the date the jury rendered a verdict against Moore in his felony trial, August 3, 1985. The board then, by letter to Moore, terminated his benefits effective August 28, 1985. In an ordinary setting an agency's findings of fact are considered to be *prima facie* correct on administrative review, but its statutory interpretations are not binding in the same

way, and a reviewing court will overturn an erroneous construction. (*Flex v. Illinois Department of Labor Board of Review* (1984), 125 Ill. App. 3d 1021, 466 N.E.2d 1050.) There were technically no formal findings of fact here, but the uncontested facts established by the record did serve this purpose, at least, for the trial court's review of the board's action.

The trial court, relying on *People ex rel. Grogan v. Lisinski* (1983), 113 Ill. App. 3d 276, 446 N.E.2d 1251, found "conviction," as used in the statute, to mean the date that a sentence is imposed upon a felony conviction and overruled the board's interpretation of the felony conviction statute which had construed "conviction" to mean the date of the jury verdict. On appeal, the board does not dispute the trial court's ruling that plaintiff's pension rights were subject to termination only when the sentence was imposed in the felony conviction. Rather, the board argues that the trial court exceeded its power on administrative review in holding that the plaintiff was entitled to a refund of his pension payments since the administrative record did not contain either legal or factual findings on this issue.

The board also contends that if this court considers this issue, then we should note that, while the Pension Code does not preclude the plaintiff's right to a refund, it also does not specifically confer such a right; hence, the plaintiff is not automatically entitled to a refund. Arguing in the alternative, the board asserts that either the plaintiff's refund rights terminated automatically with his other pension rights, or if they did not, that the refund issue was beyond the scope of administrative review, and thus, the matter should, at the very least, be remanded to the board for a determination of whether a refund right exists in this case.

■ In an administrative review proceeding, no new or additional issues may be framed by the complaint and answer in the circuit court on review in support of factual allegations not found in the record. (*Lake County Contractors Association v. Illinois Pollution Control Board* (1972), 6 Ill. App. 3d 762, 767-68, 286 N.E.2d 600, 604.) The trial court's jurisdiction in this case was limited to "all questions of law and of fact presented by the entire record before the court." (Ill. Rev. Stat. 1985, ch. 110, par. 3—110; see *Brewton v. Civil Service Com.* (1969), 115 Ill. App. 2d 460, 466, 253 N.E.2d 504, 507.) Here, the plaintiff raised the issue of refund for the first time in his complaint. Accordingly, the trial court should have refused to rule on that issue because the record did not frame this issue. Additionally, since the board also raised the issue of setoff for

the first time in its answer and counterclaim, the court was correct in ruling that the board could not raise that issue on review by the trial court. Accordingly, reviews of both issues were precluded. See *Brewton v. Civil Service Com.* (1969), 115 Ill. App. 2d 460, 253 N.E.2d 504.

■ The next issue here is raised by plaintiff's cross-appeal seeking reversal of the trial court's determination that his pension benefits were properly terminated and requesting an order of reinstatement of his pension benefits. Plaintiff contends that as of the date his pension rights were vested in 1980, they became irrevocable under the "heretofore acquired" language of the statute and that the board was without authority to terminate vested benefits. However, in *Kerner v. State Employees' Retirement System* (1977), 53 Ill. App. 3d 747, 368 N.E.2d 1118, *aff'd* (1978), 72 Ill. 2d 507, 513-14, 382 N.E.2d 243, the supreme court held that the "heretofore acquired" language refers to "prior to enactment" of the 1955 amendment and "does not refer to prior to date of vesting or contracting in the case of each individual member." Nevertheless, the plaintiff asserts that because many of the other pension codes were modified after *Kerner* to substitute "acquired prior to July 11, 1955" for the "heretofore acquired" language, and that the statute here was not so amended, the legislature must not have intended *Kerner* to apply to the Metropolitan Sanitary District's pension provisions. Plaintiff's position is untenable and the statutory construction found in *Kerner* is controlling in this case.

■ It is well settled in Illinois that public employee pensions are a matter of contractual right. The legislature surely may take action which is directed toward deterring felonious conduct in public employment by affecting the pensions rights of public employees who have been convicted of a work-related felony. (*Kraus v. Board of Trustees of Police Pension Fund* (1979), 72 Ill. App. 3d 833, 850, 390 N.E.2d 1281, 1293.) Individuals who have accepted public employment are deemed to have accepted the terms and conditions of pension rights established by the legislature prior to their employment. Further, contrary to plaintiff's argument, there is no impairment under the 1970 Illinois Constitution when the challenged term existed at the time of employment and to which plaintiff necessarily agreed to by accepting that employment. See *In re Roberts Park Fire Protection District* (1975), 61 Ill. 2d 429, 441, 337 N.E.2d 8, 15; *Taft v. Board of Trustees of Police Pension Fund* (1985), 133 Ill. App. 3d 566, 573, 479 N.E.2d 31, 36.

Plaintiff relies on case law from another jurisdiction in arguing

that his pension rights are indefeasibly vested and that, therefore, the board could not terminate his benefits for any reason. In *Wallace v. City of Fresno* (1954), 42 Cal. 2d 180, 265 P.2d 884, a retired police officer won a *mandamus* suit which he filed against the city to compel continued payment of his pension benefits after his felony conviction. The municipal ordinance there is different from the Illinois Pension Code in that it was discretionary whether the Fresno pension board would terminate benefits following a felony conviction, and could be distinguished on that ground; we do not do so because the same principles of contract law were applied there as in *Kerner*. The reason for the different result in *Wallace* was that there the plaintiff actually began employment with the city two years prior to the enactment of the felony forfeiture provision. Thus, under those circumstances, Mr. Wallace could not have been deemed to have accepted the amendment as a condition of his employment contract and, under those circumstances, the California Supreme Court refused to enforce it. In *Kerner*, as in the present case, the felony amendment was enacted prior to the plaintiff's employment with the State and, hence, it was an enforceable condition of continued pension benefits.

In *Kerner*, the plaintiff's representative also filed an administrative review action when Governor Kerner's fully vested pension benefits were terminated by the system after his felony convictions. In construing the Pension Code, the court stated that the underlying purpose of the felony forfeiture provision is "to discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." (*Kerner v. State Employees' Retirement System* (1978), 72 Ill. 2d 507, 513, 382 N.E.2d 243, 246.) Under Moore's interpretation of the Pension Code here, an employee would only need to retire and begin collecting benefits to prevent the State from giving effect to the felony conviction provision in the statute. It is clear that the legislature did not intend to terminate the benefits of only unretired employees who had committed felonies in connection with their public service employment. (72 Ill. 2d 507, 514, 382 N.E.2d 243, 246.) Therefore, the board properly gave effect to this statutory provision to terminate the pension benefits of certain convicted felons.

In a case involving the same statutory language under the Policemen's Annuity and Benefit Fund, the board's action terminating a police officer's benefits was affirmed after the court there found that the employee had received notice and a hearing. (*Murphy v. Po-*

*licemen's Annuity & Benefit Fund* (1979), 71 Ill. App. 3d 556, 390 N.E.2d 45.) In *Murphy*, the court found that the police officer participated in a hearing given subsequent to his conviction, at which hearing his pension benefits were terminated, and accordingly held that his complaint filed almost 15 months after the administrative hearing alleging that the felony conviction provision was unconstitutional was time barred under the Administrative Review Law. (71 Ill. App. 3d 556, 559, 390 N.E.2d 45, 47.) Here, of course, Moore was not given any notice prior to the board meeting at which his pension benefits were revoked, nor was he permitted an opportunity to appear before the board to be heard either before or after the adverse administrative action was taken.

In another similar case again involving policemen's pension benefits, the appellate court there analogized pension benefits to Federal welfare benefits which require a meaningful notice and an opportunity to be heard before their termination. (*Wendl v. Moline Police Pension Board* (1981), 96 Ill. App. 3d 482, 421 N.E.2d 584.) Although plaintiff here may not be entitled to a plenary hearing before his benefits are terminated in circumstances such as here, it is clear that the board should have afforded Moore notice, some opportunity to be heard, and/or consideration of any request for reconsideration before the administrative proceedings were concluded. See *Powell v. Jones* (1973), 56 Ill. 2d 70, 82, 305 N.E.2d 166, 172.

■ In 1970 the United States Supreme Court held that where benefits are a matter of statutory entitlement, the persons qualified to receive them have a constitutionally protected property interest. (*Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011.) In such circumstances, a pretermination evidentiary hearing with full administrative review is, at minimum, required under the due process clause of the fourteenth amendment before that property interest may be terminated by a State agency. (397 U.S. 254, 264, 25 L. Ed. 2d 287, 296-97, 90 S. Ct. 1011, 1018-19.) The reasoning in *Goldberg* was later extended to include unemployment benefits where the individual had already been determined eligible to receive them. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893.) Illinois has followed this reasoning in determining the property interests of public employees in other cases. See, *e.g., Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166; *Wendl v. Moline Police Pension Board* (1981), 96 Ill. App. 3d 482, 421 N.E.2d 584.

■ Thus, although the trial court was correct in holding that an eligible recipient's benefits may be terminated under authority of the

Pension Code, it erred in affirming the board's summary termination of the property interest here which is protected under United States and Illinois constitutional due process provisions. It is clear as a matter of due process under *Goldberg* and its progeny that the board erred in not providing Mr. Moore with notice and an opportunity to be heard before the termination of his benefits. Hence, it is now necessary for the board, having invalidly terminated benefits, to reinitiate termination proceedings *de novo* on remand. (See *Jones v. Board of Fire & Police Commissioners* (1984), 127 Ill. App. 3d 793, 801, 469 N.E.2d 393, 400.) It is, however, not necessary, as stated above, that the board conduct a full hearing concerning the underlying felony conviction itself. In a similar setting involving termination of benefits under the unemployment compensation statute, the Seventh Circuit recommended on remand that the State agency in its hearing might use the transcript of the Federal proceeding which had found the recipient guilty of an offense warranting termination and, "thereby shift to the applicant the burden of producing some contrary evidence." (*Jenkins v. Bowling* (7th Cir. 1982), 691 F.2d 1225, 1234.) Here, it is suggested that it would be sufficient if Moore's Federal criminal conviction is used by the board in its hearing on remand to make the *prima facie* case for revoking Moore's pension benefits under the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 13—221) and that Moore be given an opportunity to be heard concerning this issue and also on any other properly raised issue at that time.

Inasmuch as we have found that the plaintiff was not afforded his minimal rights of due process prior to termination of his benefits, we vacate the judgment of the circuit court of Cook County and remand the cause to the board of trustees of the Sanitary District Employees' and Trustees' Annuity and Benefit Fund for proceedings consistent with this opinion.

Vacated and remanded.

CAMPBELL and O'CONNOR, JJ., concur.