CRAIG PEACOCK, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND, the Village of South Chicago Heights, *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 1—09—0040

Opinion filed October 20, 2009.

Cecile L. Singer, of Chicago, for appellant.

Cary J. Collins, of Law Offices of Cary J. Collins, of Hoffman Estates, for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Craig Peacock, appeals from a judgment of the circuit court confirming a decision by the Board of Trustees of the Police Pension Fund for the Village of South Chicago Heights (the Board), which revoked his duty-related disability benefits because he was no longer disabled. On appeal, the plaintiff contends that the Board's decision is

against the manifest weight of the evidence. He also contends that he was deprived of the right to due process in the proceedings before the Board and that the circuit court erred in denying his request for attorney fees. For the reasons that follow, we affirm in part, reverse in part, and remand with directions.

The record establishes the following relevant facts. The plaintiff was appointed as a police officer for the Village of South Chicago Heights in May 1984. During 1988 and 1991, the plaintiff sustained multiple injuries to his lower back, which ultimately resulted in the need for surgical intervention. The plaintiff underwent a lumbar laminectomy, which was performed by Dr. Alex Michalow in May 1991. Four months after the surgery, Dr. Michalow released the plaintiff for full, unrestricted duty, but the chief of police suggested that the plaintiff obtain a second opinion. The plaintiff was examined by Dr. Peter Iagmin on September 13, 1991. According to Dr. Iagmin, there were no physical findings suggesting an impaired function in the plaintiff's back. However, because the plaintiff had undergone spinal surgery, Dr. Iagmin recommended that he be restricted to duties involving a lifting capacity of no more than 50 pounds on an infrequent basis. Upon consideration of the reports of Drs. Iagmin and Michalow, the chief of police advised the plaintiff that his return to work as a police officer would place him at risk of serious injury. Following a hearing, the Board awarded the plaintiff disability benefits, which were paid without interruption from 1991 until April 2006. After being placed on disability, the plaintiff retrained himself to become a journeyman machinist and worked in various shop-floor and supervisory positions before being hired as the plant manager at Progress Rail Services in approximately 1999.

Between November 1992 and April 2005, the plaintiff was evaluated by several orthopedic surgeons who had been retained by the Board to conduct independent medical examinations. Virtually all of these doctors found the plaintiff to be disabled. In particular, the plaintiff was examined by Dr. Iagmin in November 1992 and by Dr. Anthony Brown in December 1995, both of whom found that the plaintiff was not capable of performing the customary duties required of a police officer.

However, in August 1998, Dr. James Ryan, after reviewing the report of the plaintiff's surgery, issued a report stating that "[i]t appears that he evidently has recovered quite sufficiently. He may continue working as a police officer without any restrictions." In October 1998, the plaintiff sought treatment for back pain from Dr. James Harley, who ordered X-rays of the plaintiff's back. In December 1998, the plaintiff was evaluated by Dr. William Malik. Prior to

examining the plaintiff, Dr. Malik reviewed Dr. Ryan's report and the X-rays ordered by Dr. Harley, which showed early degenerative changes in the lumbar spine. Dr. Malik concluded that the plaintiff was not physically able to return to his employment as a police officer.

Dr. John Stamelos examined the plaintiff and took X-rays of his lower back in January 2002. According to Dr. Stamelos, the X-rays showed an advanced degenerative disc at L5-S1. Dr. Stamelos reported that he could not certify the plaintiff as disabled at that time, and he referred the plaintiff for a functional capacity evaluation (FCE). However, the plaintiff was unable to complete the FCE because his blood pressure exceeded the acceptable range. Dr. Stamelos advised the plaintiff to obtain treatment for his blood pressure and then reschedule the FCE within 30 days. The plaintiff never rescheduled the FCE.

In October 2002, the plaintiff was examined by Dr. David Spencer, who found that he was disabled from working as a police officer.

Dr. Stamelos evaluated the plaintiff again in June 2004. Based on his findings of S1 nerve radiculopathy in the left lower extremity, Dr. Stamelos concluded that the plaintiff was disabled from police service and that any further treatment would not improve the impairment in his lower back.

In February 2006, the plaintiff received a note from Millie Williamson, the treasurer for the Village of South Chicago Heights, stating that the Board had elected to "hold" his disability payments until it received a report that he had been examined by a doctor. The plaintiff informed Williamson that he had not been scheduled for an examination. Williamson later told the plaintiff that the note had been written in error. The plaintiff subsequently received his disability check for that month. At that time, the plaintiff was 49 years old, one year prior to being relieved of the statutory requirement that he submit to annual examinations in order to qualify for continued disability. See 40 ILCS 5/3—115 (West 2006).

Thereafter, the plaintiff was scheduled for an independent medical examination by Dr. Martin Lanoff, who was employed by a corporation known as INSPE. Prior to the examination, Dr. Lanoff reviewed the two evaluations prepared by Dr. Stamelos in January 2002 and June 2004, which were the only medical reports provided to him. After examining the plaintiff on April 10, 2006, Dr. Lanoff prepared a written report detailing the physical examination and numerous tests performed to assess the plaintiff's condition, including his range of motion, sensory and motor responses, reflexes, gait, and blood flow. Dr. Lanoff reported to the Board that the plaintiff's history and physical examination did not suggest any objective physical problem. Ac-

cording to Dr. Lanoff, Dr. Stamelos' diagnosis of an S1 radiculopathy was not supported by any physical manifestations or findings. Dr. Lanoff also noted that, although Dr. Stamelos found that the plaintiff had severe disc degeneration at L5-S1, this diagnosis did not correlate to the symptoms experienced by the plaintiff. Dr. Lanoff expressed his willingness to order a new MRI of the plaintiff's lumbar spine, but he stated that the function of the MRI would be to document the absence of any objective pathology. Although he did not believe the plaintiff was insincere or malingering, Dr. Lanoff found no physical pathology or objective basis to support a determination that the plaintiff was disabled. According to Dr. Lanoff, the plaintiff should be able to return to full, unrestricted duty as a police officer if he follows a simple lumbar exercise program. Dr. Lanoff certified that the plaintiff was not disabled from performing the duties of a police officer.

After receiving Dr. Lanoff's report and certification, the Board discontinued the payment of the plaintiff's disability benefits. In a letter dated April 27, 2006, counsel for the Board advised the plaintiff that Dr. Lanoff had determined that he was no longer disabled and that the chief of police would be informed of that fact. A copy of the INSPE "appeal procedure" was included with this letter, which stated that any information received from the plaintiff within 30 days would be forwarded to INSPE. The letter further stated that, if the plaintiff desired, the Board would hold a hearing on the issue of his disability status. On May 17, 2006, the plaintiff's attorney sent a letter to the Board, requesting that it conduct a hearing.

The Board met on June 13, 2006, but the nature of that proceeding is not contained in the record. On June 19, 2006, the chief of police sent the plaintiff a letter advising him that the Board had "cleared [him] to return to work" and that he was to report for full duty on July 10, 2006. On June 30, 2006, the plaintiff's attorney again requested that the Board conduct a hearing on the issue of the plaintiff's disability status. In that letter, the plaintiff's attorney objected to the fact that no hearing had been conducted before the chief of police ordered the plaintiff to return to work. In response, counsel for the Board stated that, under the "*Trettenero*" decision, the Board could return the plaintiff to duty based upon the opinion of Dr. Lanoff, without regard to the evaluations of other doctors.

At the plaintiff's request, the Board approved the payment for an additional MRI, which was performed on November 1, 2006, and subsequently reviewed by Dr. Lanoff. In a second written report, Dr. Lanoff stated that the recent MRI showed normal degenerative changes in the plaintiff's lumbar spine and did not reflect any significant compromise of the spine or nerve root. According to Dr.

Lanoff, these findings did not alter his prior opinion that the plaintiff was not disabled and could return to the unrestricted duties of a police officer.

During March and April 2007, the plaintiff was evaluated and treated by Dr. William Payne, an orthopedic surgeon. Dr. Payne reported that the plaintiff had a herniated disc at L4-L5 and that he suffered back pain due to a loss of disc space at L5-S1. In light of these conditions, Dr. Payne concluded that the plaintiff was unable to work as a police officer. Dr. Payne referred the plaintiff to Dr. DeRubertis for a lower-extremity evaluation, an EMG, a nerve conduction study, and an epidural injection. In addition, Dr. Payne also recommended that the plaintiff start physical therapy.

On October 4, 2007, the Board conducted an administrative hearing, at which the plaintiff was the only witness to testify. The plaintiff acknowledged that Dr. Ryan had found him able to return to work 1998, and he stated that he did not question Dr. Ryan's finding. In describing his current employment as plant manager, the plaintiff explained that he serves as the administrator for the entire facility and that his duties sometimes require him to travel to various locations throughout the country.

The plaintiff testified that he continues to experience pain in his lower back and is unable to get into and out of cars that sit low to the ground. In addition, he is unable to sit or to drive a car for more than 45 minutes at a time, and he continues to have incidents during which his back "goes out" for two or three days at a time. Yet, the plaintiff acknowledged that he has learned to live with his pain and has not pursued an on-going course of medical treatment for his back. The plaintiff admitted that, after receiving the epidural injection ordered by Dr. Payne in April 2007, he refused to submit to further injections. He also stated that, although Dr. Payne had recommended physical therapy as a means of improving his mobility, he had not participated in any physical therapy due to his work travel schedule.

The only medical evidence supporting the plaintiff's claim of continued disability consisted of Dr. Payne's reports. The plaintiff did not call Dr. Payne as a witness, nor did he present Dr. Payne's deposition testimony.

The deposition testimony of Dr. Lanoff was introduced into evidence at the hearing. Dr. Lanoff testified that he is board-certified in the fields of physical medicine and rehabilitation, as well as in pain medicine. Dr. Lanoff outlined the extent of his physical examination of the plaintiff on April 10, 2006, and stated that the examination revealed no tangible, physical finding that corresponded to the symptoms described by the plaintiff. He also stated that the November

2006 MRI did not show any objective pathology that would explain the plaintiff's symptoms. In addition, Dr. Lanoff testified that he had reviewed the evaluations of the other doctors who had previously found the plaintiff disabled, including Drs. Iagmin, Brown, Malik, Stamelos, Spencer, and Payne. According to Dr. Lanoff, those doctors had not found any objective physical problem that correlated to the plaintiff's symptoms, and none of the prior reports altered his opinion that the plaintiff was not disabled. He concluded, therefore, that there was no reason why the plaintiff could not return to his prior employment as a police officer.

Upon consideration of the plaintiff's testimony, the documentary medical evidence presented at the hearing, and the deposition testimony of Dr. Lanoff, the Board issued its written decision on January 17, 2008, finding that Dr. Lanoff's opinion that the plaintiff was no longer disabled was persuasive. The Board also determined that Dr. Lanoff's conclusion was supported by the reports of Dr. Ryan and Dr. Michalow. The Board found it significant that the plaintiff had not pursued an on-going course of medical treatment for his back and that he had not followed the recommendations of Dr. Payne for physical therapy and additional epidural injections. The Board concluded that the plaintiff had recovered from his prior disability and was not eligible for disability benefits "dating back to the time he was found no longer disabled by Dr. Martin Lanoff."

The plaintiff filed a two-count complaint in the circuit court. Count I sought a judicial review of the Board's administrative decision terminating the plaintiff's disability benefits. In count II, the plaintiff sought damages under 42 U.S.C. §1983 (2006), based on the alleged deprivation of his right to due process, and attorney fees under 42 U.S.C. §1988 (2006). Following a hearing, the circuit court entered a judgment on count I, confirming the Board's decision that the plaintiff was no longer disabled, and entered a written finding that the judgment was final and appealable. This appeal followed.

We initially consider the plaintiff's argument that the Board's decision finding him no longer disabled is against the manifest weight of the evidence. In support of this argument, the plaintiff claims that the Board erred in finding that Dr. Lanoff's opinion was supported by Dr. Ryan's earlier opinion because the record did not contain a copy of Dr. Ryan's full examination report and because the plaintiff did not recall being examined by Dr. Ryan. The plaintiff also contends that Dr. Lanoff's opinion should have been disregarded as not credible because he (1) lacked the requisite credentials to offer an opinion, (2) exhibited a bias against prescribing surgery, and (3) demonstrated an inadequate methodology and "work ethic."

In reviewing the propriety of an administrative decision, the agency's findings and conclusions on questions of fact are deemed to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 2006). A reviewing court may not substitute its judgment for that of the administrative agency, but must ascertain whether the findings of fact and decision of the agency are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). The decision of an administrative agency is against the manifest weight of the evidence only where the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88. The fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently will not justify reversal of the agency's decision. *Abrahamson*, 153 Ill. 2d at 88. Rather, the appropriate test is whether there is sufficient evidence in the record to support the agency's determination. *Abrahamson*, 153 Ill. 2d at 88. "[B]ecause the weight of the evidence and the credibility of the witnesses are within the province of the [agency], there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 184, 596 N.E.2d 691 (1992).

■ A police officer's entitlement to disability benefits is contingent on his continued disability, and the Board may revoke those benefits if he has recovered from the disability. *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 348 Ill. App. 3d 835, 842, 810 N.E.2d 573 (2004). Under section 3—116 of the Code, if a police officer is found upon medical examination to have recovered from a disability, the Board shall certify to the chief of police that the officer is no longer disabled and is able to resume the duties of his or her position. 40 ILCS 5/3—116 (West 2006). Disability benefits may be revoked on the basis of a single medical examination finding that the officer is no longer disabled. *Trettenero v. Police Pension Fund of City of Aurora*, 333 Ill. App. 3d 792, 800, 776 N.E.2d 840 (2002). Whether a police officer is entitled to disability benefits is a question of fact to be resolved by the board of trustees of the pension fund. 40 ILCS 5/3—114.1(d) (West 2006); *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505, 877 N.E.2d 1101 (2007). The claimant bears the burden of proving his or her entitlement to continued disability benefits. *Wade*, 226 Ill. 2d at 505.

■ We are unpersuaded by the contention that the Board erred in finding that Dr. Lanoff's opinion was supported by Dr. Ryan's opinion because the record does not contain a copy of the full examination report and because the plaintiff did not specifically recall being examined by Dr. Ryan. In essence, this claim merely challenges the

factual determinations underlying the Board's decision. It is well established, however, that the Board is charged with deciding the factual questions, and its findings are deemed to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 2006); *Abrahamson*, 153 Ill. 2d at 88. In this case, the record reflects that the plaintiff specifically acknowledged that Dr. Ryan found that he was able to return to duty in 1998, and he testified that he did not question Dr. Ryan's finding. Based on the record before us, we cannot say that the Board erred in relying upon Dr. Ryan's opinion in support of Dr. Lanoff's conclusion that the plaintiff was not disabled.

■ We similarly reject the plaintiff's assertion that the Board should have disregarded Dr. Lanoff's opinion because his credentials, methodology, and approach to recommending surgery rendered his opinion incredible. On its face, this assertion simply challenges the Board's assessment of Dr. Lanoff's credibility and the proper weight to be afforded his testimony. Yet, determinations regarding witness credibility and the weight to be given the evidence are matters within the province of the Board. *Iwanski*, 232 Ill. App. 3d at 184. On review, this court accords great deference to the Board's determinations on these issues. *Lapp v. Village of Winnetka*, 359 Ill. App. 3d 152, 167, 833 N.E.2d 983 (2005). After careful consideration of Dr. Lanoff's testimony, we do not believe that his opinion can be characterized as so lacking in credibility that the Board's acceptance of that opinion is against the manifest weight of the evidence.

■ In this case, the only medical evidence presented at the hearing to support the plaintiff's claim of continued disability was Dr. Payne's reports. However, Dr. Payne was not called as a witness and, therefore, offered no testimony to explain his opinion. The Board specifically noted that the plaintiff's failure to pursue a course of on-going treatment undercut the claim that his back injury was so severe that he had not recovered. In addition, the Board found it significant that the plaintiff had not followed Dr. Payne's recommendations regarding physical therapy and additional epidural injections. After reviewing all of the evidence presented, the Board found Dr. Lanoff's opinion that the plaintiff was no longer disabled to be persuasive. Based on the record presented, we find that there is sufficient competent evidence in the record to support the Board's determination that the plaintiff is no longer disabled, and therefore its determination in this regard is not against the manifest weight of the evidence.

We next address the plaintiff's argument that the Board deprived him of his constitutional right to due process. In particular, the plaintiff claims that his right to due process was abrogated because the Board (1) discontinued payment of his disability benefits prior to

conducting any hearing, (2) predetermined his claim, and (3) ceded its decision-making authority to Dr. Lanoff.

The constitutions of the United States and of Illinois prohibit the deprivation of life, liberty, and property without due process. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2. The receipt of a disability pension is a property right which is protected by due process guarantees (Ill. Const. 1970, art. XIII, §5; *People ex rel. Sklodowski v. State of Illinois*, 182 Ill. 2d 220, 228-29, 695 N.E.2d 374 (1998); *Trettenero*, 333 Ill. App. 3d at 799), and administrative proceedings terminating disability payments must conform to the requirements of due process (*Mathews v. Eldridge*, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 31, 96 S. Ct. 893, 901 (1976); *Wendl v. Moline Police Pension Board*, 96 Ill. App. 3d 482, 486, 421 N.E.2d 584 (1981)).

Adequate notice of the proposed governmental action and a meaningful opportunity to be heard are the fundamental prerequisites of due process. *Goldberg v. Kelly*, 397 U.S. 254, 267-68, 25 L. Ed. 2d 287, 299, 90 S. Ct. 1011, 1020 (1970); *Abrahamson*, 153 Ill. 2d at 92. In order to comport with due process, the notice must be reasonably calculated "to apprise [the] interested parties of the pendency of the action." *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 432, 551 N.E.2d 640 (1990); *Wendl*, 96 Ill. App. 3d at 487. Further, some form of hearing is required before an owner is finally deprived of his or her property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 952, 94 S. Ct. 2963, 2975-76 (1974). However, due process is a flexible concept, and the specific procedural requirements vary, depending upon the nature of the rights affected and the context in which the deprivation occurs. *Mathews*, 424 U.S. at 334, 47 L. Ed. 2d at 33, 96 S. Ct. at 902; *Wendl*, 96 Ill. App. 3d at 486. Though an evidentiary hearing is not required in every circumstance, the administrative proceedings employed must provide the party affected with a meaningful procedure to assert his claim prior to the deprivation or impairment of a property right. *Mathews*, 424 U.S. at 348-49, 47 L. Ed. 2d at 41, 96 S. Ct. at 909; *Wendl*, 96 Ill. App. 3d at 487.

■ In this case, neither of the fundamental requisites of due process was afforded to the plaintiff prior to the discontinuation of his disability benefits. With regard to the requirement of adequate notice, the record demonstrates that the plaintiff had been certified as disabled by several doctors between 1991 and 2006, and he had received disability benefits, without interruption, during that 15-year time period. Prior to the discontinuation of those benefits, the only information provided to the plaintiff was the notice that he had been scheduled for a routine annual examination by Dr. Lanoff, to which the plaintiff submitted. The Board discontinued the plaintiff's dis-

ability payments after it received Dr. Lanoff's report. The first notice received by the plaintiff informing him that the Board had decided to discontinue his benefits based on Dr. Lanoff's opinion was the letter dated April 27, 2006, stating that Dr. Lanoff had found him to be no longer disabled. There is no indication in the record that the plaintiff was given any prior notification of the Board's intention to terminate his disability benefits. We conclude that the discontinuation of the plaintiff's disability benefits without any previous notice of the Board's decision was in direct conflict with the principle that due process mandates adequate notice prior to the deprivation of a property right. See *Goldberg*, 397 U.S. at 267-68, 25 L. Ed. 2d at 299, 90 S. Ct. at 1020.

■ Next, we turn to the plaintiff's contention that he was deprived of due process because the Board did not grant him a hearing prior to the discontinuation of his disability benefits. In deciding whether the plaintiff was afforded a meaningful opportunity to be heard, we must balance (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interests, including the fiscal and administrative burdens that additional or substitute procedural safeguards would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903. Here, as in *Mathews*, the private interest at stake was the uninterrupted receipt of benefits pending a final administrative decision on the plaintiff's disability status. See *Mathews*, 424 U.S. at 340, 47 L. Ed. 2d at 36, 96 S. Ct. at 905. The plaintiff clearly had an economic interest in the continued receipt of his disability benefits, which had been paid for 15 years. In light of these circumstances, we cannot say that the plaintiff's private interest in the uninterrupted receipt of benefits was insignificant.

The second factor in the *Mathews* inquiry demands an assessment of the risk of an erroneous deprivation of the plaintiff's private interest through the procedure used and the probable value, if any, of additional or alternative procedural safeguards. See *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903. In *Mathews*, the Supreme Court observed that the risk of erroneous deprivation was ameliorated where the "elaborate character" of the predeprivation administrative procedures permitted the claimant to complete a detailed questionnaire regarding his disability status, provided the claimant with access to all of the information relied on by the agency and a summary of the reasons for the proposed termination, and allowed the claimant to submit additional evidence or arguments to challenge the accuracy of the information and the correctness of the agency's tentative conclu-

sions. *Mathews*, 424 U.S. at 345-46, 47 L. Ed. 2d at 38-39, 96 S. Ct. at 907-08.

Here, however, the plaintiff was not afforded any administrative procedure before his disability benefits were discontinued. In stark contrast to the circumstances present in *Mathews*, the plaintiff was not granted the opportunity to submit any evidence or arguments to refute the accuracy of Dr. Lanoff's opinion or the correctness of the Board's conclusion before his benefits were discontinued. In addition, although the letter of April 27, 2006, informed the plaintiff that Dr. Lanoff had found him to be no longer disabled, there is no indication in the record that the plaintiff was provided with a copy of Dr. Lanoff's examination report or a summary of the Board's reasons for the discontinuation of his benefits. Moreover, the INSPE "appeal process" merely provided that the plaintiff could submit a contrary medical opinion that would be considered by Dr. Lanoff. Nothing in that "appeal process" guaranteed that the Board would consider such additional information prior to discontinuing or suspending the plaintiff's disability benefits. Therefore, even if the INSPE "appeal process" had been pursued by the plaintiff, it was not an adequate substitute for the type of procedural protections found to be constitutionally sufficient in *Mathews*. Based upon these facts, we believe that the risk of erroneous deprivation of the plaintiff's disability benefits and the probable value of additional procedural safeguards were indeed substantial.

Finally, we consider the interests of the governmental entity, which include the administrative burdens and other societal costs associated with requiring additional procedural safeguards prior to the deprivation of the private interest. *Mathews*, 424 U.S. at 347, 47 L. Ed. 2d at 40, 96 S. Ct. at 909. In this case, the Board's interests consist of protecting the fiscal integrity of the pension fund by promptly adjudicating a police officer's entitlement to continued disability benefits and limiting the cost and burden of such proceedings. Recognizing that a formal, evidentiary hearing is not mandated in all cases (*Mathews*, 424 U.S. at 348-49, 47 L. Ed. 2d at 41, 96 S. Ct. at 909; *Wendl*, 96 Ill. App. 3d at 487), we do not believe that some form of procedure allowing the plaintiff an opportunity to be heard prior to the discontinuation of his disability benefits would pose onerous fiscal or administrative burdens. We perceive no compelling governmental interest that would warrant the truncated procedure applied in this case.

On balance, the governmental interests at stake in this case are significantly outweighed by the substantial risk of erroneous deprivation of the plaintiff's property right and the extensive benefits that

would result from the granting of basic due process protections and adherence to general notions of fairness. For all of the reasons set forth above, we conclude that the Board's discontinuation of the plaintiff's disability benefits, without notice or any form of a predeprivation hearing, did not comport with the requirements of due process.

In reaching this conclusion, we reject the Board's contention that the discontinuation of the plaintiff's disability benefits in April 2006 is supported by this court's decision in *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 714 N.E.2d 11 (1999). In *Stillo*, the claimant was found to be ineligible for judicial pension benefits based on a statutory provision precluding the payment of such benefits to a person who had been convicted of a felony relating to his service as a judge. *Stillo*, 305 Ill. App. 3d at 1005-06; 40 ILCS 5/18—163 (West 1994). After considering the *Mathews* factors set forth above, the *Stillo* court held that, where the claimant's pension benefits were statutorily required to be terminated as a consequence of a criminal conviction, the suspension of such benefits for one month prior to a hearing did not violate the principles of due process. *Stillo*, 305 Ill. App. 3d at 1010-11.

Although not expressly stated, we believe the analysis in *Stillo* is informed by the principle that, where a prior conviction serves as the basis for some subsequent governmental action, additional due process protections to prove the previous conviction are not necessary prior to the subsequent action. See *Apprendi v. New Jersey*, 530 U.S. 466, 488-90, 147 L. Ed. 2d 435, 453-55, 120 S. Ct. 2348, 2361-63 (2000), citing *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 140 L. Ed. 2d 350, 370-71, 118 S. Ct. 1219, 1232-33, (1998); see also *Stillo*, 305 Ill. App. 3d at 1011, citing *Moore v. Board of Trustees of the Sanitary District Employees' & Trustees' Annuity & Benefit Fund*, 157 Ill. App. 3d 158, 166, 510 N.E.2d 87 (1987) (recognizing that it was not necessary for the pension board to conduct a full hearing as to the underlying felony conviction itself). Because the prior conviction was established in a proceeding cloaked with due process, the rights to adequate notice and a fair adjudication have already been satisfied. See *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 453-54, 120 S. Ct. at 2362; see also *Jones v. United States*, 526 U.S. 227, 249, 143 L. Ed. 2d 311, 329-30, 119 S. Ct. 1215, 1227 (1999). Moreover, where the previous conviction is acknowledged, it represents an objective fact that is not subject to dispute, and concerns about the need for additional due process protections in a subsequent proceeding are mitigated. See *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 453-54, 120 S. Ct. at 2361-62; *People v. Watson*, 322 Ill. App. 3d 164, 167-68, 749 N.E.2d 1078 (2001) (holding that the existence of prior convictions are typically matters of

public record, of which the trial court can take judicial notice without violating the defendant's right to due process).

In this case, however, the triggering circumstance for termination of the plaintiff's disability benefits was a finding by the Board that he was no longer disabled. See 40 ILCS 5/3—116 (West 2006). Unlike the prior felony conviction in *Stillo*, the plaintiff's disability status in this case constituted a disputed question of fact to be decided by the Board. Though the opinion of a single doctor may be sufficient to warrant termination of disability benefits, such an opinion merely constitutes evidence of the officer's disability status that may be accepted or rejected by the Board. Due process required that the plaintiff be afforded an opportunity to rebut such evidence prior to the discontinuation of his benefits. *Mathews*, 424 U.S. at 348-49, 47 L. Ed. 2d at 41, 96 S. Ct. at 909. Based on the foregoing, we find that the decision in *Stillo* does not justify the Board's action here.

■ The plaintiff further argues that the posthearing decision of the Board also violated his right to due process because the Board surrendered its decision-making authority to Dr. Lanoff and because the Board's decision was preordained, rendering the postdeprivation evidentiary hearing a "meaningless exercise." In support of this argument, the plaintiff correctly asserts that the decision regarding a police officer's eligibility for disability benefits is a factual determination that must be made by the Board and not an individual examining physician (see *Wade*, 226 Ill. 2d at 505, 513-14) and that he is entitled to a fair hearing prior to a decision by the Board regarding his disability status (see *Abrahamson*, 153 Ill. 2d at 95).

Although we accept the plaintiff's statement of the law in this regard, we find that the record does not support his contention that he was deprived of due process by the manner in which the Board arrived at its final determination. The record demonstrates that the plaintiff had ample notice of the administrative hearing conducted by the Board in October 2007. At that hearing, the plaintiff was represented by counsel, he appeared and testified in his own behalf, and he was permitted to present documentary evidence in support of a claim of continued disability. In addition, the plaintiff was afforded the opportunity to cross-examine Dr. Lanoff during his evidentiary deposition. In its written decision, the Board expressly stated that it had considered the testimony of the plaintiff, the deposition testimony of Dr. Lanoff, and the documentary medical evidence that was submitted at the hearing. Therefore, we reject the plaintiff's claims that the Board had ceded its decision-making authority to Dr. Lanoff and that the evidentiary hearing was a "meaningless exercise" because the Board's decision was preordained. Based on the record presented, we

find that the evidentiary hearing conducted by the Board on the issue of the plaintiff's disability status comported with due process.

For the reasons set forth above, we conclude that the portion of the Board's decision finding that the plaintiff was no longer disabled is not against the manifest weight of the evidence and that the Board's hearing and posthearing decision did not violate the plaintiff's right to due process. However, we find that the prehearing discontinuation of the plaintiff's disability benefits did not comport with due process. Accordingly, the circuit court erred in confirming that portion of the Board's decision finding the plaintiff was ineligible for disability benefits "dating back to the time he was found no longer disabled by Dr. Martin Lanoff."

■ Finally, we address the plaintiff's contention that the trial court erroneously refused to award him attorney fees under 42 U.S.C. §1988 (2006). In considering this issue, we initially observe that attorney fees under this statutory provision may be awarded only to a party who has prevailed "[i]n any action or proceeding to enforce a provision of sections *** 1983, 1985, and 1986." 42 U.S.C. §1988(b) (2006); see also *Walker v. Calumet City, Illinois*, 565 F.3d 1031, 1033-34 (7th Cir. 2009) (recognizing that in order to be a prevailing party, the legal relationship of the parties must be materially altered by a court order). Here, the record demonstrates that the plaintiff is not such a prevailing party. As previously noted, the circuit court confirmed the Board's administrative decision. However, that order did not dispose of count II of the plaintiff's complaint, which sought damages under section 1983. Because the circuit court had issued no ruling on the plaintiff's section 1983 claim, his request for attorney fees is premature.

For the foregoing reasons, we reverse that portion of the circuit court's judgment that confirmed the prehearing discontinuation of the plaintiff's disability benefits, affirm the judgment of the circuit court in all other respects, and remand the cause to the circuit court for further proceedings with directions that, following the circuit court's disposition of count II, the cause is to be remanded to the Board with instructions to reinstate the plaintiff's entitlement to benefits from April 10, 2006, the date of Dr. Lanoff's report, until January 17, 2008, the date of the entry of the Board's administrative decision.

Affirmed in part, reversed in part, and remanded with directions.

CUNNINGHAM, P.J., and THEIS, J., concur.