LENDEN J. DONNELLS, Plaintiff-Appellee, v. THE WOODRIDGE POLICE PENSION BOARD, Defendants-Appellants.

Second District   No. 2—87—0014

Opinion filed August 28, 1987.—Rehearing denied September 29, 1987.

Peter A. Loutos, of Peter A. Loutos, Ltd., of Chicago, for appellants.

Stanley H. Jakala, of Berwyn, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Defendants, the Woodridge Police Pension Board and its members (board), appeal from an order of the circuit court of Du Page County, which, on administrative review, reversed the decision of the board. The trial court determined that plaintiff, Lenden Donnells, was eligi-

ble to participate in the pension system. The board contends that the court improperly relied on a liberal construction of sections 3—106 and 3—109 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1985, ch. 108½, pars. 3—106, 3—109) and that the trial court's decision to reverse the board's decision was against the manifest weight of the evidence.

Donnells joined the Woodridge police force on May 1, 1968. Under the existing law at that time, Donnells was ineligible to participate in the pension fund because he was over 35 years old. In consideration for obtaining his position with the force, Donnells executed a waiver of any rights he may have had to receive a pension, but the village of Woodridge purchased an annuity policy for his benefit.

In 1976, Donnells received a letter informing him of his eligibility to participate in the pension fund provided he apply and pay back contributions in the amount of $8,088.81 prior to July 1, 1976. At the hearing before the board, Donnells claimed that the board informed him of this opportunity while he was still hospitalized due to a motorcycle accident. The board had not afforded him adequate notice to raise the money. The board concluded from the testimony at the hearings that plaintiff had been warned on at least two occasions prior to the deadline and that Donnells had executed a letter indicating that he did not wish to participate in the pension system.

Donnells remained on a medical leave of absence from June 10, 1976, the date of his accident, until February 4, 1980. In the interim, Donnells requested to return to work on "inside duty." The director denied his request in a letter dated June 28, 1977, suggesting that plaintiff "please continue to seek medical assistance and when you are totally able to perform all duties your reinstatement will be considered." In December 1977, Donnells received a letter indicating that he had become eligible for a police pension provided he could pass the physical and bring his contributions up-to-date by July 1, 1978. No response is included in the record. However, the record reveals that Donnells received notice of a physical examination scheduled for March 2, 1979, to which he replied that he would be unable to pass the examination due to his disability.

Donnells returned to work in February 1980. On March 20, 1980, plaintiff applied to the board for acceptance to participate in the pension fund. The board denied plaintiff admission on the basis of an opinion letter by the Illinois Department of Insurance which indicated that plaintiff was ineligible because he missed the application deadline of July 1, 1976. The board conducted hearings on the issue of plaintiff's eligibility.

Donnells filed an addendum to his application while the hearings were still in progress. The addendum alleged that plaintiff was entitled to entry into the pension fund as he applied within 90 days from his reinstatement in compliance with section 3—106 of the Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—106). During this time, he received longevity pay. The amount was based in part on the time plaintiff was on a medical leave of absence. The board's findings of fact include:

"1. LENDEN J. DONNELLS was ineligible to become a member of the Pension Fund when he was hired in 1968 because he was older than 35 years old.

2. That he executed a Waiver of Pension Fund Rights in consideration of his being hired as a police officer and that the Village of Woodridge purchased an annuity for his benefit.

3. That in 1975, a change in the Illinois Revised Statutes, Public Acts 79—1165, allowed Mr. Donnells to enter the Fund if he paid the required amount prior to July 1, 1976.

4. That he failed to do so, after notice on at least two occasions of the amount needed.

5. That he signed a written declaration that he could not enter the Fund in 1976.

6. That Mr. Donnells was not eligible to enter the Fund by virtue of Illinois Revised Statutes, Public Act 80—1051, which applied to new officers between 1976 and 1978.

7. That Mr. Donnells failed to apply at that time.

8. That Mr. Donnells filed an application in 1980 based upon Illinois Revised Statutes, Ch. 108½, Section 3—106, that a police officer had the right to refile for the Pension within three months of his "reappointment" to the police force.

9. That Mr. Donnells was never reappointed but was reinstated to an active status, after being on medical leave. He was always a sworn officer who was shown on the police roster that he was on sick leave."

Plaintiff thereafter filed a complaint in the circuit court of Du Page County for administrative review of the board's decision which denied him entry into the pension fund. The complaint alleged that the board never contacted plaintiff regarding his opportunity to enter the pension system on or before July 1, 1978, and that he was given inadequate time to raise the money required to enter the fund in 1976. The court determined that the board's decision was not against the manifest weight of the evidence; however, the court concluded that the board improperly applied the law to the facts. The court determined that the Code should be given liberal construction so that

plaintiff would be considered reappointed under section 3—106 or that the deadline of July 1, 1976, be tolled due to the presence of plaintiff's medical illness until returning to work. The trial judge explained:

> "My decision, in no way on this case, was based on the manifest weight of the evidence. That's a factor that I didn't consider, because it seemed to me that there was no dispute between the parties concerning what the facts were.
>
> The question was the legal effect of those facts. And in that respect, the decision of the Court is based upon—as I said previously, what I believe to be the—the correct approach.
>
> And, admittedly, I think I have said before on the record that this was a liberal construction of the statute."

The trial court ruled in Donnells' favor and denied the board's motion for reconsideration. The board filed a timely notice of appeal.

■ We note in passing that the plaintiff did not argue at the administrative level that his medical condition should have tolled the deadline for application. Rather, this argument was advanced by the trial judge. An administrative agency ought to have the opportunity to rule on the issues in the first instance. (*Smith v. Department of Public Aid* (1986), 150 Ill. App. 3d 584, 588-89, 502 N.E.2d 42.) However, we will address this issue as it constitutes a legal question involving statutory construction.

■■ ■ The Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—110) empowers a trial court to review any final administrative decision and to consider all questions of law and of fact presented by the entire record before the court. The decision of the administrative agency will be reversed either where it is legally erroneous or is factually against the manifest weight of the evidence. (*Pepsi-Cola General Bottlers, Inc. v. Human Rights Com.* (1985), 137 Ill. App. 3d 288, 292, 484 N.E.2d 538.) The court is not bound to accord the same measure of deference to an administrative agency's construction of a statute as would be given to an agency's finding of fact. *Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 20, 385 N.E.2d 793.

■ Initially, we will address plaintiff's second contention that the trial court's decision was against the manifest weight of the evidence. Upon administrative review, the trial court and the appellate court are limited to ascertaining whether the findings and the orders of the administrative body were contrary to the manifest weight of the evidence and to whether the administrative body acted arbitrarily in clear abuse of its discretion. (*Easter Enterprises, Inc. v. Illinois Li-*

*quor Control Com.* (1983), 114 Ill. App. 3d 855, 857, 449 N.E.2d 1013.) We are limited, therefore, to ascertaining whether the board's decision was contrary to the manifest weight of the evidence and not, as the plaintiff suggests, whether the trial court's decision was against the manifest weight of the evidence. In the instant case, the trial court found that the board's decision was not factually against the manifest weight of the evidence. Therefore, the only issue remaining is whether the trial court erred in construing the Code liberally, which constitutes a legal question.

■■ It is well settled that rules governing police and firemen's pensions are to be liberally construed in favor of those to be benefited. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 211, 485 N.E.2d 871.) The trial court determined that under a liberal interpretation of sections 3—106 and 3—109 of the Code, plaintiff was eligible to participate in the pension fund. The applicable amendment of section 3—109 provided in relevant part:

"Any policeman who was excluded by reason of the age restriction removed by this amendatory Act of 1975 may elect to participate by making a written application to the Board before July 1, 1976 and establishing service credit for his past service by paying into the police pension fund before July 1, 1976 the amount he would have contributed had deductions from his salary been made for such purpose at the time such service was rendered, together with interest thereon at 2% per annum from the time such service was rendered until the date the payment is made." (Ill. Rev. Stat., 1976 Supp., ch. 108½, par. 3—109, as amended by Pub. Act 79—1165, effective December 18, 1975.)

Section 3—106 provides in pertinent part:

"Police officer, officer. 'Police officer', or 'officer': Any person who (1) is appointed to the police force of a police department and sworn and commissioned to perform police duties; (2) is found upon examination of a duly licensed physician or physicians selected by the board to be physically and mentally fit to perform the duties of a police officer; and (3) within 3 months after receiving his or her first appointment, and if reappointed, within 3 months thereafter, makes written application to the board to come under the provisions of this Article." (Ill. Rev. Stat. 1985, ch. 108½, par. 3—106.)

Specifically, the trial court found that plaintiff had been reappointed to the force in February 1980 under section 3—106 and had made a timely application for benefits, and the deadline for the original appli-

cation, July 1, 1976, was tolled due to plaintiff's medical incapacity.

In our opinion, the trial court erroneously reversed the board's decision to deny entry into the pension fund based on an incorrect interpretation of the statute. While the courts have favored a liberal construction of the statute which would allow benefits, the trial court's construction of the statute extends the benefits beyond the legislature's intent. Section 3—109 never authorized the tolling of the deadline of application due to sickness or incapacity. The legislature had full power to direct the distribution of the pension fund and did not exempt individuals from applying and making contributions. The court has no right to modify the legislative language. *Giuliano v. Board of Trustees of the Firemen's Pension Fund* (1967), 89 Ill. App. 2d 126, 128, 231 N.E.2d 257.

The legislature's apparent intent was to allow eligibility to previously excluded police officers provided they complete a written application to the board and make the necessary contributions prior to July 1, 1976. In *Young v. Board of Trustees of the Police Pension Fund* (1978), 57 Ill. App. 3d 689, 695-96, 373 N.E.2d 709, the board appealed the trial court's reversal of its decision that plaintiff was ineligible to participate in its pension fund. Plaintiff had originally been excluded from participating by virtue of her age at the time she was appointed a patrolwoman. By 1975, however, a curative and remedial provision of the amended section 3—109 provided plaintiff with the opportunity to become eligible to participate in the pension fund. Although plaintiff had made the requisite contributions to the fund and had numerous communications with the board, the record was devoid of a written application. The court held that her actions did not constitute the necessary written application which the legislature obviously envisioned. Nothing in the record indicated to the court that plaintiff had complied with the key requirement. The court remanded the cause for the purpose of allowing plaintiff the opportunity to demonstrate that she made a written application to the board before July 1976 and for the board to determine whether the necessary contributions together with interest at 2% had been made.

While *Young* did not involve a claim that a police officer was unable to comply with the requirements due to illness, the case is instructive. The court's holding indicates that the plaintiff must demonstrate that the requirements of a written application and contributions were met before the deadline in order to qualify for pension benefits. The court was not willing to accept plaintiff's actions in lieu of the application. Likewise, plaintiff's failure in this case to comply with the statute precludes his admission into the fund. Additionally, as a practi-

cal matter, the record indicates that despite plaintiff's medical condition, he was not precluded from filing a written application because he was able to file a written refusal to participate in the fund, and, similarly, defendant testified before the board that he was unable to afford the contributions.

■■ Further, in our view, the trial court erroneously reversed the board's decision that plaintiff could not apply in March 1980 as a "reappointed" policeman. In determining a legislature's intent, the statute must be read as a whole and all relevant parts considered. (*People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569.) Under section 3—106 of the Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—106), plaintiff, if reappointed, could apply to the board within three months of his reappointment. Reappointment, however, does not encompass returning from a medical leave of absence. Reappointment is synonymous with being rehired. The present section 3—109 indicates that a "police officer who is reappointed shall, before being declared eligible to participate in the pension fund, repay to the fund as required by Section 3—124 any refund received thereunder." (Ill. Rev. Stat. 1985, ch. 108½, par. 3—109.) Section 3—124 allows refunds for those who "separate" from police service with less than 20 years of service and for those who die with less than 10 years of police service. (Ill. Rev. Stat. 1985, ch. 108½, par. 3—124.) The record indicates, as the board found, that plaintiff was on a medical leave of absence but not separated from the force. In fact, plaintiff received longevity pay with credit for the years he spent on medical leave. Therefore, no reasonable construction of the Code renders plaintiff eligible to participate in the pension fund.

Accordingly, the trial court's decision is reversed.

Reversed.

HOPF and INGLIS, JJ., concur.