RICHARD JARVIS *et al.*, Plaintiffs-Appellants, v. SOUTH OAK DODGE, INC., Defendant (Chrysler Financial Corporation *et al.*, Defendants-Appellees).

Second District   No. 2—99—1317

Opinion filed March 23, 2001.

Maureen Flaherty, of Lehrer, Flaherty & Canavan, of Wheaton, for appellants.

Maurice J. McCarthy and Jean M. Prendergast, both of Quinlan & Crisham, Ltd., of Chicago, for appellees.

JUSTICE GEIGER delivered the opinion of the court:

At issue in this case is whether the lessee of a consumer lease agreement may state a cause of action for rescission against the holder of the lease agreement when the basis for the claim is not apparent on the face of the lease. The plaintiffs, Richard Jarvis and Christine Jarvis (the Jarvises), appeal from the August 27, 1999, order of the circuit court of Du Page County dismissing, with prejudice, count IV of their amended complaint against defendant Gold Key Lease, Inc. (Gold Key). The Jarvises seek rescission of a motor vehicle lease that they believe they were duped into signing. The Jarvises contend that they have sufficiently alleged a cause of action for rescission of a motor vehicle lease to survive Gold Key's motion to dismiss brought pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1998)).

## I. BACKGROUND

On April 16, 1999, the Jarvises filed their amended complaint against defendants South Oak Dodge, Inc. (South Oak), Chrysler Financial Corporation (CFC), and Gold Key, concerning a motor vehicle lease wherein South Oak was listed as the lessor and Gold Key as the holder. CFC was named in the suit because, according to the Jarvises, the lease provided that CFC is the agent of Gold Key with the power to act on Gold Key's behalf to administer and enforce the lease. Near the bottom of the lease appeared the following "Notice":

> "ANY HOLDER OF THIS CONSUMER LEASE IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH (1) THE LESSEE COULD ASSERT AGAINST THE LESSOR OF THE VEHICLE LEASED PURSUANT HERETO AND (2) ARE APPARENT ON THE FACE OF THE CONSUMER LEASE."

This language is mandated by section 70 of the Illinois Motor Vehicle Leasing Act (the Leasing Act) (815 ILCS 636/70 (West 1998)), which provides that no lessor shall take or receive a consumer lease that fails to contain the above-referenced notice.

Count I of the amended complaint was directed toward all three defendants and alleged a cause of action for violations of the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/10a (West 1998)). In count I, the Jarvises alleged that South Oak orally represented that the purchase price of the vehicle would be $15,000 but that if the Jarvises executed a lease they would be able to immediately purchase the vehicle for $14,300, thereby saving $700. The Jarvises also alleged that South Oak's representation was false in that they were unable to purchase the vehicle for $14,300 after they executed the lease. The Jarvises further alleged that South Oak was acting as the agent of CFC and Gold Key and that

CFC and Gold Key created the lease agreement forms and instructed South Oak on "how to persuade consumers to lease rather than purchase" motor vehicles.

Count II was directed toward all three defendants and alleged a cause of action for common-law fraud for money damages. Count III was directed toward South Oak and alleged a cause for revocation of acceptance of goods. Count IV was directed toward CFC and Gold Key and alleged a cause of action for rescission of the lease under a regulation promulgated by the Federal Trade Commission (the FTC Holder Rule). See 16 C.F.R. § 433.2 (2000).

Gold Key filed a motion to dismiss the amended complaint pursuant to section 2—615 of the Code. Most relevant to this appeal is Gold Key's argument concerning count IV. Citing the "Notice" provision in the lease, set forth above, Gold Key argued that the Jarvises could not state a cause of action for rescission because, as the holder of the lease, Gold Key is subject to the claims that the Jarvises could assert against South Oak only if such claims were apparent on the face of the lease. Because the basis for the Jarvises' claim for rescission is not apparent on the face of the lease, Gold Key reasoned, the Jarvises' cause of action could not lie against Gold Key.

On August 30, 1999, the trial court entered an order dismissing all counts of the amended complaint. Most relevant to this appeal are the trial court's findings as to count IV:

> "This Court construes the plain language of the lease and [the FTC Holder Rule] to mean that the holder of a consumer lease is subject to the claims and defenses which the lessee could assert against the lessor if, and only if, those claims and defenses are apparent on the face of the lease. Use of the conjunctive 'and' necessarily must indicate that the legislature required both listed elements to be met. While such a construction appears harsh, and treats lessors [sic] differently from purchasers, this Court cannot rewrite the statutory language. Its meaning is not inoperable or questionable."

The trial court dismissed count IV as to Gold Key. In addition, the trial court also dismissed CFC from the suit entirely and further dismissed counts I and II as to Gold Key, without prejudice, for failure to plead an agency relationship between Gold Key and South Oak. As of the time the appeal was filed, certain counts were still pending against South Oak, which is not a party to this appeal. The Jarvises filed a timely notice of appeal.

## II. DISCUSSION

### A. Waiver

We first must address waiver issues presented by CFC and Gold

Key. First, CFC argues that the Jarvises have waived their right to appeal the dismissal of claims as to CFC, which the Jarvises admit in their reply brief. Next, Gold Key argues that the Jarvises waived their right to challenge the dismissal of counts I and II, for consumer fraud violations and common-law fraud, as to Gold Key. The Jarvises admit this also in their reply brief.

Despite the Jarvises' admission that they waived their challenges on appeal to the dismissal of count I, they nevertheless set forth in their briefs arguments pertaining to the constitutionality of section 10a of the Consumer Fraud Act (815 ILCS 505/10a (West 1998)). Section 10a requires proof of a public injury from those attempting to state a cause of action under the Consumer Fraud Act against a motor vehicle dealer. In their reply brief, the Jarvises assert that one of the two issues they are addressing on appeal is "the constitutionality of section 815 ILCS 510a [*sic*] of the Consumer Fraud Act, as it pertains to Count IV."

This contention does not make any sense. The cited provision of the Consumer Fraud Act pertains solely to count I, which the Jarvises admit they have waived. It was only in response to Gold Key's motion to dismiss count I of the amended complaint that the Jarvises first raised the constitutionality of section 10a. The constitutionality of this statute is in no way relevant to count IV. Therefore, we will not consider any of the Jarvises' constitutional arguments, interesting as they may be.

■ With regard to count IV, Gold Key argues that the Jarvises have waived their argument concerning "the interplay" between section 70 of the Leasing Act and the FTC Holder Rule. Gold Key maintains that, at the trial level, the Jarvises did not argue that the Leasing Act was inconsistent with the FTC Holder Rule but argued only that certain language in section 70 should be disregarded. We disagree that the Jarvises have waived their argument concerning count IV. It is readily apparent from the trial record that several statutes and regulations were discussed by the parties and the trial judge in construing the meaning of section 70 and, ultimately, the language of the lease agreement. Therefore, we will consider the Jarvises' statutory construction argument pertaining to section 70 of the Leasing Act, and to the extent that such construction argument involves the consideration of applicable federal law, we believe that such arguments are properly before this court.

### B. Law Pertaining to Motor Vehicle Leases

#### i. Federal Law

■ The Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.*

(1994)) was enacted to mandate certain disclosures in financed consumer transactions. 15 U.S.C. § 1601 (1994). In 1976, Congress enacted Part E of TILA, known as the Consumer Leasing Act (CLA), to specifically provide for disclosures respecting consumer leases (15 U.S.C. § 1667 *et seq.* (1994)). The CLA contains a preemption provision providing that no state statute may be inconsistent with the terms of TILA. 15 U.S.C. § 1667e (1994). The Board of Governors of the Federal Reserve System (the Board) thereafter promulgated an extensive set of regulations (Regulation M) that govern the intricacies of the disclosures. 12 C.F.R. § 213.1 *et seq.* (2000). A disgruntled consumer may bring a cause of action under TILA for violations of the disclosure requirements. 15 U.S.C. § 1640 (1994).

Responding, in part, to the backlash associated with TILA suits brought against finance companies holding consumer installment agreements, Congress enacted an amendment to TILA in 1980 to specifically address the concerns of the assignees of such agreements. 15 U.S.C. § 1641 (1994). Specifically, section 1641(a) of TILA provides:

"[A]ny civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a) (2000).

In the context of a suit brought under TILA against an assignee, section 1641(a) abrogated the FTC Holder Rule, which provides that the holder of a consumer credit contract is subject to all the claims that the debtor could have brought against the original seller. 16 C.F.R. § 433.2 (2000).

### ii. State Law

Prior to 1997, consumer motor vehicle leases were governed in large part by Article 2A of the Uniform Commercial Code (810 ILCS 5/2A—101 *et seq.* (West 1998)). Pursuant to Article 2A, the lessee has numerous remedies in the event of lessor default, including cancellation of the lease agreement, recovery of monies paid, recovery of damages for nondelivery, and specific performance. 810 ILCS 5/2—508 (West 1998).

In 1997, the General Assembly enacted the Leasing Act "to promote the understanding of vehicle leasing in this State by providing for the disclosure of lease obligations to consumer lessees." 815 ILCS 636/5 (West 1998). The Leasing Act sets forth various requirements for a consumer motor vehicle lease, including all items required to be disclosed by the federal CLA, as well as other disclosures, including the vehicle's residual value and the capitalized cost. 815 ILCS

636/25 (West 1998). The Leasing Act provides notice requirements in the event of a default (815 ILCS 636/35 (West 1998)) and sets forth how to determine the value of the vehicle at the termination of a lease (815 ILCS 636/40 (West 1998)).

In 1998, the Illinois Attorney General issued an opinion stating that, because the requirements of the Leasing Act and the federal CLA were substantially the same, the model motor vehicle lease forms issued by the Board under Regulation M would comply with the requirements of the Leasing Act. 1998 Ill. Att'y Gen. Op. 170.

## C. Application

We turn now to the merits of the Jarvises' argument that the trial court erred in construing section 70 of the Leasing Act and, ultimately, the language contained in the lease. The Jarvises contend that the plain meaning of section 70 is that the holder of the consumer lease is subject to both of the following: the claims that could have been asserted against the lessor and the claims that are apparent on the face of the consumer lease. The Jarvises further contend that limiting the viable claims against Gold Key to only those that are apparent on the face of the lease would frustrate and contradict federal law. Gold Key counters that a clear reading of section 70 demonstrates that it limits the claims against a holder of a lease to those claims that are apparent on its face. Essentially, the parties differ as to the meaning of the conjunction "and" between the two elements set forth in section 70.

■ The interpretation of section 70 of the Leasing Act is an issue of first impression. In interpreting the meaning of a statute, our primary concern is to ascertain and give effect to the true intent of the legislature. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). The best evidence of legislative intent· is the language used in the statute itself, which must be given its plain and ordinary meaning. *Pierce Downer's Heritage Alliance v. Village of Downers Grove*, 302 Ill. App. 3d 286, 295 (1998). The statute should be evaluated as a whole, with each provision construed in connection with every other section. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992). We must also consider the reason and necessity for the law, the evil to be remedied, and the object to be obtained by the statute. *Schuttler v. Ruark*, 225 Ill. App. 3d 678, 683 (1992). A statute capable of two interpretations should be given the interpretation that is reasonable and that will not produce absurd, unjust, or unreasonable results that the legislature could not have intended. *Schuttler*, 225 Ill. App. 3d at 683.

■ A straightforward reading of section 70 reveals that it mandates that all lease agreements include a notice to consumers in bold-faced

type concerning the holder's liability. Nowhere in the provision does it state that a holder is "only" or "solely" liable in certain situations. There is no reference whatsoever to the holder's liability being limited in any way. Most importantly, there is no indication anywhere in the Leasing Act that section 70 was designed to change the lessee's substantive rights and remedies as they existed prior to the enactment of the Leasing Act.

The Leasing Act was enacted in 1997 "to limit the liability or the concern to the consumer." 89th Ill. Gen. Assem., Senate Proceedings, May 16, 1996, at 78-79 (statements of Senator Palmer). It was a statute designed to address "some of the problems that we've been experiencing in the automobile leasing industry" (89th Ill. Gen. Assem., House Proceedings, March 25, 1996, at 61 (statements of Representative Saviano)), and to provide "a lot of built-in consumer protections" (89th Ill. Gen. Assem., House Proceedings, March 25, 1996, at 62 (statements of Representative Saviano)). The General Assembly acknowledged that "today all consumers are at the mercy of the lessor." 89th Ill. Gen. Assem., House Proceedings, March 25, 1996, at 66 (statements of Representative Lang).

The goal of consumer protection is aptly demonstrated in the Leasing Act itself. As noted above, section 5 provides that the legislative intent behind the Leasing Act was to promote the understanding of motor vehicle leasing by providing for the disclosure of lease obligations to consumer lessees. 815 ILCS 636/5 (West 1998). It is noteworthy that none of the provisions of the Leasing Act in any way limit any of the consumer's substantive rights.

We believe that the absence of a suggestion of a change in the law regarding consumer remedies is entirely consistent with the express legislative purpose of the Leasing Act. As noted in the legislative history, the purpose of the Leasing Act was to protect consumers by mandating that they be given greater information in the lease agreement. Specifically, the legislature strove to facilitate the disclosure of information to the consumer.

Support for Gold Key's reading of section 70 is conspicuously absent from the two additional sections of the Leasing Act that discuss holder liability. Section 25(m)(5) provides, "No consumer lease shall contain any of the following provisions: *** The holder is relieved from liability for any legal remedy which the lessee may have had against the holder under the consumer lease ***." 815 ILCS 636/25(m)(5) (West 1998).

Section 85 of the Leasing Act leaves no doubt that the consumer's rights are not abrogated:

"Unless displaced by the particular provisions of this Act, other

statutes of this State applicable to personal property leases and the principles of law and equity, including the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause supplement its provisions." 815 ILCS 636/85 (West 1998).

There is a far more fundamental problem with Gold Key's proposed interpretation. Section 70 is clear that "no lessor shall take" a consumer lease without the mandatory language, which, under Gold Key's interpretation, would leave little opportunity for a consumer to bargain for liability on the part of the holder. If we were to construe the provision as limiting the holder's liability to those claims that are apparent on the face of the lease, then the consumer's hands would be tied because of the mandatory nature of section 70. We do not agree that the legislature intended to compromise the position of the consumer in that manner.

In addition, we believe that if the intent of section 70 were to limit the consumer's rights to hold a holder liable, then the legislature would not have hidden such a departure from prior law within a provision that is clearly aimed at the disclosure of information. Assuming that such a provision would not be preempted by the federal CLA, we believe that such a dramatic exception to the rules set forth by common law and statute would be embodied within a provision clearly pertaining to the consumer's substantive rights and remedies. Instead of the broad-reaching holder protection that Gold Key would have us infer from section 70, the legislature has chosen to protect the holder or lessor from suits under the Leasing Act in very limited situations. Section 75(2) provides:

"A holder or lessor may not be held liable in an action brought under this Act for a violation of this Act that was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid error. Examples of bona fide errors include, but are not limited to, clerical errors, *** computer malfunctions, and programming errors, except that an error of legal judgment with respect to a person's obligations under this Act is not a bona fide error." 815 ILCS 636/75(2) (West 1998).

In short, we decline Gold Key's invitation to construe section 70 to mean that a holder of a lease is liable for only those claims that are apparent on the face of the lease. We are persuaded that section 70 should be read as requiring the notification to the consumer of the holder's liability for faulty disclosures on the lease agreement. Consistent with the Leasing Act as a whole, and with the federal CLA, we believe that the inclusion of the mandated language into a lease agree-

ment has no effect on any rights or remedies, either common-law or statutory, that the consumer may have against the holder.

Gold Key also argues that *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998), serves to limit its liability to only those claims that are apparent on the face of the lease document. Gold Key misapprehends *Taylor*. At issue in *Taylor* was whether the plaintiffs could state a cause of action for a TILA disclosure violation on a retail installment contract against the creditor/assignee. The court in *Taylor* applied section 1641(a) of TILA, set forth above, to preclude assignee liability under TILA for a cause of action stemming from a misleading disclosure on a retail installment contract. *Taylor* does not stand for the proposition that the only source of liability that an assignee faces stems from TILA. Indeed, the court in *Taylor* recognized that, "if the cars [the plaintiffs] purchased turned out to be lemons and they assert a right to withhold payment against the sellers, they may also assert the same right against the assignees." *Taylor*, 150 F.3d at 693.

In the present case, the plaintiffs have not alleged a cause of action under TILA. Therefore, neither section 1641(a) of TILA nor *Taylor* does anything to relieve Gold Key of liability. In addition, in *Taylor*, the agreement at issue was a retail installment contract, not a lease. In the present case, moreover, Gold Key was identified as the "holder" in the body of the lease agreement. As such, Gold Key's self-proclaimed "assignee" status is somewhat suspect.

Because we believe that neither the applicable federal rules nor state rules examined above prohibit a cause of action for rescission against the holder of a motor vehicle lease, we believe that the inclusion of the statutorily mandated language in the lease similarly does not limit the Jarvises to claims that are apparent on the face of the lease. The issue now becomes whether the Jarvises have stated a valid cause of action for rescission in count IV.

■ As noted above, the Jarvises have framed their rescission count under the FTC Holder Rule. The FTC Holder Rule, entitled "Preservation of consumers' claims and defenses, unfair or deceptive acts or practices," provides as follows:

> "In connection with any sale or lease of goods or services to consumers, in or affecting commerce as 'commerce' *is defined in the Federal Trade Commission Act*, it is an unfair or deceptive act or practice *** for a seller, directly or indirectly, to:
>
> (a) Take or receive a *consumer credit contract* which fails to contain the following provision ***:
> NOTICE
> ANY HOLDER OF THIS *CONSUMER CREDIT CONTRACT* IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE

DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED HERETO OR WITH THE PROCEEDS HEREOF." (Emphasis added.) 16 C.F.R. § 433.2 (2000).

■ Relying on *Marchionna v. Ford Motor Co.*, No. 94C275 (N.D. Ill. August 10, 1995) (mem. op.), Gold Key argues that the FTC Holder Rule does not apply to leases because leases are not "consumer credit contracts" within the meaning of Regulation Z (12 C.F.R. § 226.2 (2000)) promulgated by the Board under TILA. In *Marchionna*, the plaintiff filed a complaint against the holder of a motor vehicle lease agreement seeking rescission based upon the FTC Holder Rule. The plaintiff did not contest the assignee's standing as a holder in due course but, rather, argued that the FTC Holder Rule rendered the holder-in-due-course doctrine inapplicable. The court noted that the FTC Holder Rule defined a consumer credit contract as any instrument that embodies a debt arising from a "purchase money loan" transaction or a "financed sale," as such rules are defined in TILA and in Regulation Z. *Marchionna*, mem. op. at 21.

The court noted that the definition of a "financed sale" in the FTC Holder Rule is a sale in which credit is extended in connection with a "credit sale" (see 16 C.F.R. § 433.1(e) (2000)). *Marchionna*, mem. op. at 21. For a lease to be considered a "credit sale," as defined by Regulation Z, the consumer must agree to pay a sum equivalent to or greater than the total value of the goods and must have the option to obtain ownership of the goods for no additional or nominal consideration. 12 C.F.R. § 226.2(a)(16) (2000).

The plaintiff in *Marchionna* was required to pay approximately $13,202 at the end of the lease term to obtain ownership. The court concluded that $13,202 was not "nominal" consideration. Thus, the lease agreement was not a credit sale and, therefore, not subject to the FTC Holder Rule. *Marchionna*, mem. op. at 21. This analysis is consistent with the Board's commentary to Regulation M stating that Regulation M does not cover a lease that meets Regulation Z's definition of credit sale. 12 C.F.R. Pt. 213, Supp. I (2000). Accordingly, the court held that the plaintiff could not employ the FTC Holder Rule to subject the assignee to any claims he may have had against the dealership.

We agree with the foregoing reasoning and similarly conclude that the Jarvises cannot state a cause of action for rescission against Gold Key based upon the FTC Holder Rule. However, upon examination of the allegations of fraud incorporated into count IV, we cannot say that there is no set of facts under which the Jarvises could state a cause of action for rescission against Gold Key. We therefore reverse that portion of the trial court's order dismissing count IV with prejudice, and

520

we remand the cause to the trial court to allow the Jarvises to replead count IV. See *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 18 (1997).

### III. Conclusion

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed as to counts I and II, reversed as to count IV, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

HUTCHINSON, P.J., and McLAREN, J., concur.