THOMAS PHELAN, Plaintiff-Appellant, v. THE VILLAGE OF LaGRANGE PARK POLICE PENSION FUND *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—01—1226

Opinion filed December 26, 2001.

Michael G. Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellant.

Richard J. Puchalski and Richard J. Reimer, both of Sklodowski, Puchalski & Reimer, of Chicago, for appellees.

PRESIDING JUSTICE HALL delivered the opinion of the court:

This is an action for judicial review of an administrative agency's decision to deny a retired police officer convicted of a felony a refund of his pension contributions. On August 10, 2000, plaintiff, Thomas

Phelan (Phelan), a retired LaGrange Park police officer convicted of extortion, filed a complaint for administrative review against defendants, the LaGrange Park Police Pension Fund and its individual trustees (Board), seeking reversal of the Board's decision denying him a refund of his pension contributions. On February 28, 2001, the circuit court affirmed the Board's decision denying Phelan's request for a refund. Plaintiff filed his appeal on March 29, 2001.

## FACTUAL BACKGROUND

The facts giving rise to this appeal are not in dispute. Thomas Phelan began service as a LaGrange Park police officer on November 27, 1967, and served continuously in that capacity until his retirement on December 12, 1997. During this time period, Phelan was a member and participant of the LaGrange Park Police Pension Fund (Pension Fund). On December 18, 1997, Phelan filed an application with the Pension Fund requesting a retirement pension based upon his 30 years of service with the LaGrange Park police department. Phelan subsequently began receiving a retirement pension of approximately $2,696.10 per month from the Pension Fund effective December 12, 1997.

In 1998, Phelan was served with a two-count criminal indictment in the federal court for the Northern District of Illinois. Count I of the indictment alleged that Phelan violated 18 U.S.C. § 1951 (1994) by extorting bribe monies from individuals who were either arrested or were subject to criminal investigations. Count II alleged that Phelan engaged in a criminal conspiracy in violation of 18 U.S.C. § 1962(d) (1994).

On October 29, 1998, Phelan pled guilty to extortion. In a letter dated November 19, 1998, the Pension Fund notified Phelan that pursuant to section 3—147 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3—147 (West 1996)) his pension benefits would be subject to termination upon his conviction of any felony relating to or arising out of or in connection with his service as a LaGrange Park police officer. The letter also informed Phelan that he could waive his right to a hearing and apply for a refund of monies he had contributed less the amount of benefits he had previously received. In a follow-up letter, the Pension Fund informed Phelan that he was entitled to a refund of his pension contributions in the amount of $62,651.58. The Pension Fund arrived at the figure of $62,651.58 by multiplying the number of monthly pension payments Phelan had received, 11, with the monthly amount he had paid out of his contributions, $216.78, and deducting this total (11 x $216.78 = $2,384.58) from his total contributions to the fund ($65,036.16 − $2,384.58 = $62,651.58).

On February 24, 2000, Phelan was sentenced to 12 months in federal prison, he was fined $5,000 and was ordered to pay $3,000 in restitution.

On May 15, 2000, the Board conducted an administrative hearing to determine if Phelan's felony conviction would require him to forfeit his retirement pension benefits. The Board would also determine if Phelan's felony conviction would disqualify him from obtaining a refund of his pension contributions.

At the hearing, Phelan conceded that his felony conviction extinguished any right he had to future retirement benefits, but he argued that he was entitled to a refund of the contributions he made to the police pension fund during his 30 years of service with the La-Grange Park police department. Phelan requested a refund of his pension contributions, which totaled approximately $65,000.

At the close of the hearing, the Board voted to terminate Phelan's retirement pension and to deny his request for a refund of his pension contributions. At the time the Board terminated Phelan's retirement pension he had received $80,830 in retirement benefits from December 1997 through May 2000.

On July 18, 2000, the Board issued its written decision regarding this matter. First, the Board held that the plain language of section 3—124 of the Pension Code, entitled "Refund" (40 ILCS 5/3—124 (West 1996)), did not authorize a refund to police officers with more than 20 years of service. The Board therefore reasoned that pursuant to section 3—124, Phelan was not entitled to a refund of his pension contributions because he retired with over 20 years of service as a police officer. Second, the Board held that public policy precluded a police officer from benefitting from his own misconduct and, therefore, public policy mandated denial of a refund of Phelan's pension contributions.

On August 10, 2000, Phelan filed a complaint for administrative review in the circuit court of Cook County seeking a reversal of the Board's decision denying his request for a refund. On February 28, 2001, the circuit court found that the Board's decision was not contrary to the manifest weight of the evidence and affirmed the Board's order denying Phelan's request for a refund of his pension contributions.

On appeal, Phelan contends that: (1) the Board erred in its interpretation that section 3—124 of the Pension Code disqualified him from receiving a refund of his pension contributions; and (2) the Board incorrectly determined that granting him a refund of his pension contributions would violate public policy. For the reasons that follow, we reverse the Board's decision that section 3—124 of the Pension

Code disqualified Phelan from receiving a refund of his pension contributions, and we find that the Board incorrectly determined that granting Phelan a refund of his pension contributions would violate public policy. However, we also find that under the circumstances of this case, Phelan is not entitled to a refund of his pension contributions because the amount of pension benefits he has previously received ($80,830) exceeds the amount of his total contributions ($65,036.16).

## ANALYSIS

### Standard of Review

■ In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)) this court reviews the administrative agency's decision and not the circuit court's decision. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 709 N.E.2d 293 (1999). Upon review, an agency's findings of fact are held to be *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 603 N.E.2d 477 (1992).

An agency's conclusions of law and construction of a statute, however, are reviewed *de novo. Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 632 N.E.2d 1035 (1994); *Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637 (1997). Despite the *de novo* nature of the review, this court affords substantial deference to an agency's interpretation of a statute which the agency administers, because of the experience and expertise the agency has gained through enforcing the statute. *DiFiore v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 313 Ill. App. 3d 546, 729 N.E.2d 878 (2000); *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 714 N.E.2d 11 (1999).

■ In the instant case, the Board determined that the plain language of section 3—124 of the Pension Code, entitled "Refund" (40 ILCS 5/3—124 (West 1996)), disqualified Phelan from receiving a refund of his pension contributions because he retired from the LaGrange Park police department with over 20 years of service to the department. Section 3—124 of the Pension Code provides in relevant part:

> "A police officer who is separated from police service after June 30, 1953 with less than 20 years of service is entitled to a refund upon request of all contributions made by the officer to the police pension fund." 40 ILCS 5/3—124 (West 1998).

Phelan contends, however, that the Board erred in interpreting that section 3—124 of the Pension Code disqualified him from receiv-

ing a refund of his pension contributions. Phelan maintains that when the Board reviewed his application for a refund, the circumstances of his case obligated the Board to consider statutory provisions other than section 3—124. Specifically, Phelan contends that the Board, in making its decision, erred by failing to consider the language of section 3—147 of the Pension Code, entitled "Felony Conviction" (40 ILCS 5/3—147 (West 1998)), which provides in relevant part:

"None of the benefits provided in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a police officer.

This Section shall not impair any contract or vested right acquired prior to July 11, 1955 under any law continued in this Article, nor preclude the right to a refund." 40 ILCS 5/3—147 (West 1998).

Phelan claims that section 3—147, unlike section 3—124, addresses the issue of a request for a refund motivated by a felony conviction. Phelan contends that the Board erred in interpreting that section 3—124 of the Pension Code disqualified him from receiving a refund of his pension contributions since the second paragraph of section 3—147 of the Pension Code expressly provides that a felony conviction does not preclude the right to a refund. Phelan is correct.

■ When construing the meaning of a disputed statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *People v. Zaremba*, 158 Ill. 2d 36, 40, 630 N.E.2d 797 (1994). Legislative intent is best determined by examining statutory language, which must be given its plain and ordinary meaning. *McTigue v. Personnel Board*, 299 Ill. App. 3d 579, 701 N.E.2d 135 (1998). Courts must look first to the language of the statute, and where that language is unambiguous, the statute must be enforced as enacted without resort to other aids of construction. *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151, 485 N.E.2d 1076 (1985). In construing the policeman's pension fund act, this court has a duty to enforce the pension law as enacted, according to its plain and unmistakable provisions. *Edwards v. Board of Trustees of Police Pension Fund*, 22 Ill. App. 3d 260, 317 N.E.2d 364 (1974), *affirmed*, 61 Ill. 2d 330, 335 N.E.2d 440 (1975). In addition, the language of police pension statutes should be liberally construed in favor of the rights of the pensioner. *Greenan v. Board of Trustees of the Police Pension Fund*, 213 Ill. App. 3d 179, 573 N.E.2d 825 (1991); *Jahn v. City of Woodstock*, 99 Ill. App. 3d 206, 425 N.E.2d 490 (1981).

■ Section 3—124 of the Pension Code authorizes a pension board to issue a refund of pension contributions not only to police officers who are separated from police service with less than 20 years of ser-

vice, but also to officers who die with less than 10 years of police service. See *Donnells v. Woodridge Police Pension Board*, 159 Ill. App. 3d 735, 512 N.E.2d 1082 (1987). Thus, section 3—124 enables a police officer or the officer's surviving spouse or heirs to obtain a refund of all contributions the police officer made to the pension fund, in those situations where the officer had not yet received pension benefits because he or she was either separated from police service with less than 20 years of service or had died with less than 10 years of police service. Consequently, section 3—124 does not apply in the present case, because at the time Phelan requested a refund of his pension contributions, he had already received pension benefits for approximately 2¹/₂ years before his benefits were terminated by his felony conviction. In addition, section 3—124 of the Pension Code has no application to the set of facts in this case, because it does not address a situation where a pensioner requests a refund of contributions upon termination of benefits due to the pensioner's felony conviction.

■ On the other hand, section 3—147 of the Pension Code specifically applies in a situation where a pensioner requests a refund of contributions after his or her retirement benefits have been terminated due to a felony conviction. The language of section 3—147, when applied to the facts in this case, is more specific and, therefore, controls over the general language contained in section 3—124. See *People v. Villarreal*, 152 Ill. 2d 368, 604 N.E.2d 923 (1992) (stating that it is a fundamental rule of statutory construction that where there are two statutory provisions, one of which is general and the other specific, which both relate to the same subject, the specific provision controls and should be applied). Again, section 3—147 of the Pension Code, entitled "Felony Conviction," provides in relevant part:

> "This Section shall not impair any contract or vested right acquired prior to July 11, 1955 under any law continued in this Article, *nor preclude the right to a refund*." (Emphasis added.) 40 ILCS 5/3—147 (West 1998).

This language specifically provides that a pensioner's forfeiture of pension benefits by virtue of a felony conviction will not preclude the pensioner from receiving a refund of his or her pension contributions.

The Board cites to *Edwards v. Board of Trustees of Police Pension Fund*, 22 Ill. App. 3d 260, 317 N.E.2d 364 (1974), in support of its contention that the plain language of section 3—124 of the Pension Code disqualified Phelan from receiving a refund of his pension contributions. However, *Edwards* does not support the Board's contention because *Edwards* did not discuss section 3—147 of the Pension Code and the case did not involve a pensioner's request for a refund of his or her contributions in a situation where the pensioner's benefits were terminated due to a felony conviction.

Furthermore, if this court were to adopt the Board's interpretation of section 3—124, then a police officer convicted of a felony who had less than 20 years of service would be entitled to a refund, while an officer convicted of the same felony having 20 or more years of service would be ineligible for a refund. Section 3—124 of the Pension Code should not be interpreted in such a way that it would be possible for a police officer convicted of a felony with 19 years of service is entitled to a refund, while a second officer convicted of the same felony but with one extra year of service (20 years) is disqualified from receiving a refund. We do not believe that the drafters of section 3—124 intended this section of the Pension Code to be construed in such a manner, since such a construction would be neither logical, useful nor reasonable. See *Jarvis v. South Oak Dodge, Inc.*, 319 Ill. App. 3d 509, 747 N.E.2d 383 (2001) (a statute should be given an interpretation that is reasonable and that will not produce absurd or unjust results that the legislature could not have intended).

■ Based on the foregoing analysis and case law, we hold that the Board erred in interpreting that the 20-year limiting provision in section 3—124 of the Pension Code disqualified Phelan from receiving a refund of his pension contributions where the plain language of section 3—147 of the Pension Code specifically provides that a pensioner's felony conviction does not preclude the pensioner from receiving a refund of his or her contributions.

Even though we find that under section 3—147 of the Pension Code a pensioner's felony conviction does not preclude the pensioner from receiving a refund of his or her pension contributions, in the instant case Phelan is not entitled to a refund of his pension contributions because the amount of pension benefits he previously received ($80,830) exceeded the amount of his total contributions ($65,036.16).

This court recently issued an opinion in the case of *Shields v. Judges' Retirement System*, 329 Ill. App. 3d 27 (2001), in which a former Cook County circuit court judge whose benefits had been terminated as a result of his felony conviction sought a refund of all the contributions he had made to the Judges Retirement System of Illinois (the System). The former judge argued that the retirement benefits he received prior to his conviction should not have been deducted from his contributions in calculating the total amount of his refund. The court in *Shields* decided not to adopt the former judge's argument and instead found that the pension board correctly determined that the former judge was not entitled to a refund of all of his contributions but, rather, was entitled to a refund of his contributions ($113,222.04) less benefits paid to him prior to his conviction ($75,348.77), for a total refund of $37,873.27.

In *Shields*, the pension board determined that subsection (c) rather than subsection (a) of section 18—129 of the Pension Code (40 ILCS 5/18—129(a), (c) (West 1992)) applied to the calculation of a refund for an annuitant whose pension benefits were terminated as a result of a felony conviction. The pension board found that subsection (a) of section 18—129 of the Pension Code provided for a full refund of contributions in a situation where a judge had not yet begun to receive retirement benefits. Therefore, the pension board reasoned that subsection (a) of section 18—129 was inapplicable in *Shields* because the former judge had received retirement benefits for over one year before his benefits were terminated due to his felony conviction.

Instead, the pension board in *Shields* found that subsection (c) of section 18—129 of the Pension Code was more analogous to the facts in *Shields* because subsection (c) dealt with a request for a refund of contributions in a situation where an annuitant who had previously received retirement benefits had those benefits terminated due to the annuitant's death, and the facts in *Shields* dealt with a request for a refund of contributions where the annuitant had previously received retirement benefits and those benefits were terminated due to the annuitant's felony conviction. The pension board reasoned that even though the former judge's retirement benefits were terminated due to his felony conviction rather than his death, subsection (c) rather than (a) was more closely analogous to the factual situation in *Shields* because at the time the former judge's benefits were terminated he was actually an annuitant and had previously received retirement benefits.

The *Shields* pension board found that, pursuant to section 18—129(c), where there are no beneficiaries eligible to receive a survivor's annuity, a deceased annuitant's estate would only be entitled to a refund of contributions to the extent that those contributions exceeded the retirement benefits previously paid. Based on this finding, the pension board reasoned that under section 18—129(c) the former judge was not entitled to a refund of all of his contributions but, rather, was entitled to a refund of his contributions less the amount of benefits paid to him prior to his conviction. The pension board determined that if it adopted the line of reasoning espoused by the former judge, then an annuitant whose pension benefits were terminated by a felony conviction would obtain more in benefits than an annuitant whose benefits were terminated by death, because the former annuitant would be entitled to a full refund of all contributions even if the retirement benefits received by the annuitant exceeded the contributions made by that annuitant. Consequently, the court in *Shields* found that the pension board correctly determined

that the former judge was not entitled to a refund of all of his contributions but, rather, was entitled to a refund of his contributions less benefits paid to him prior to his conviction.

The reasoning the pension board and appellate court used in *Shields* applies equally well in the present case. As previously stated, the amount of pension benefits Phelan has already received ($80,830) exceeds the amount of his total contributions ($65,036.16). Consequently, if this court allowed Phelan to obtain a refund of his contributions under these circumstances, then a police officer who received a refund under section 3—147 would receive more benefits than a police officer who received a refund under section 3—124, because an officer whose benefits were terminated by a felony conviction would be entitled to all of the benefits he received prior to conviction and to a complete refund as well, even if the preconviction benefits the officer received far exceeded his or her contributions. Section 3—147 of the Pension Code should not be interpreted to benefit a pensioner whose benefits are terminated by a felony conviction over a police officer whose benefits are terminated by separation or death.

Therefore, this court finds that pursuant to section 3—147 of the Pension Code, a pensioner whose retirement benefits are terminated due to a felony conviction is entitled to a refund of pension contributions only to the extent that those contributions exceed benefits already paid. Consequently, in the instant case, Phelan is not entitled to a refund of his pension contributions because the amount of pension benefits he has previously received ($80,830) exceeds the amount of his total contributions ($65,036.16).

Phelan next contends that the Board incorrectly concluded that, in light of his receipt of $80,830 in retirement benefits, granting him a refund of his pension contributions would violate public policy. The public policy of the State of Illinois is reflected in its constitution, statutes and judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341, 537 N.E.2d 730 (1989). While the term "public policy" lacks a precise definition, it may be stated generally as a legal principle that no one may lawfully do that which has a tendency to injure the public welfare. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 725-26, 616 N.E.2d 1224 (1993).

The Illinois Supreme Court has stated that a primary purpose of the pension forfeiture statute is to "discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 382 N.E.2d 243 (1978). This court has no doubt that breach of the public trust, rising to the level of a felony, is a serious offense and ought to

be punished. In the instant case, the record reveals that Phelan has been punished. Phelan was sentenced to 12 months in federal prison, he was fined $5,000, he was ordered to pay $3,000 in restitution, and pursuant to section 3—147 of the Pension Code he forfeited his right to future pension benefits.

Public policy is embodied in the provisions of section 3—147 of the Pension Code, which provide that a pensioner's felony conviction extinguishes the pensioner's right to future benefits. However, section 3—147 also expressly states that a pensioner's felony conviction does not preclude the pensioner's entitlement to a refund of pension contributions. In Illinois it is well settled that public employee pensions are a matter of contractual right. See *Moore v. Board of Trustees of the Sanitary District Employees' & Trustees' Annuity & Benefit Fund*, 157 Ill. App. 3d 158, 510 N.E.2d 87 (1987). In addition, the legislature may take action which is directed toward deterring felonious conduct in public employment by affecting the pension rights of public employees who have been convicted of a work related felony. *Kraus v. Board of Trustees of the Police Pension Fund*, 72 Ill. App. 3d 833, 850, 390 N.E.2d 1281 (1979). The drafters of section 3—147 of the Pension Code chose to discourage official malfeasance by terminating the future pension benefits of a pensioner convicted of a felony, while at the same time providing that a pensioner's felony conviction does not preclude him or her from obtaining a refund of pension contributions. Consequently, Illinois public policy is not inconsistent with a police officer obtaining a refund of contributions under section 3—147, to the extent that those contributions exceed benefits already paid.

Accordingly, for the reasons set forth above, we reverse the trial court's judgment affirming the Board's decision that section 3—124 of the Pension Code disqualified Phelan from receiving a refund of his pension contributions.

Reversed.

CERDA and SOUTH, JJ., concur.