Third Division
 December 26, 2001

No. 1-01-1226

THOMAS PHELAN, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County.
 )
 )
 v.

 ) No. 00 CH
 11686
 )
THE VILLAGE OF LAGRANGE PARK POLICE ) Honorable
PENSION FUND, THE BOARD OF TRUSTEES ) Thomas P. Durkin,
OF THE VILLAGE OF LAGRANGE PARK ) Judge Presiding.
POLICE PENSION FUND, REG POTTER, )
President, CYNTHIA LAUTNER, )
Vice President, WILLIAM BEAUDWAY, )
Secretary, FELIX HERNANDEZ, Trustee, )
and DONALD BARKELL, Trustee, )
 )
 Defendants-Appellees. )

 PRESIDING JUSTICE HALL delivered the opinion of the court:
 This is an action for judicial review of an administrative
agency's decision to deny a retired police officer convicted of a
felony, a refund of his pension contributions. On August 10, 2000,
plaintiff, Thomas Phelan, (Phelan), a retired LaGrange Park police
officer convicted of extortion, filed a complaint for administrative
review against defendant, the LaGrange Park Police Pension Fund and
its individual trustees (Board), seeking reversal of the Board's
decision denying him a refund of his pension contributions. On
February 28, 2001, the circuit court affirmed the Board's decision
denying Phelan's request for a refund. Plaintiff filed his appeal on
March 29, 2001.
 FACTUAL BACKGROUND
 The facts giving rise to this appeal are not in dispute. Thomas
Phelan began service as a LaGrange Park police officer on
November 27, 1967, and served continuously in that capacity until his
retirement on December 12, 1997. During this time period, Phelan was
a member and participant of the LaGrange Park Police Pension Fund
(Pension Fund). On December 18, 1997, Phelan filed an application
with the Pension Fund requesting a retirement pension based upon his
30 years of service with the LaGrange Park Police Department. Phelan
subsequently began receiving a retirement pension of approximately
$2,696.10 per month from the Pension Fund effective December 12, 1997.
 In 1998, Phelan was served with a two-count criminal indictment
in the federal court for the Northern District of Illinois. See United
States v. Phelan, 98 CR 351-1. Count I of the indictment alleged that
Phelan violated 18 U.S.C. § 1951 by extorting bribe monies from
individuals who were either arrested or were subject to criminal
investigations. Count II alleged that Phelan engaged in a criminal
conspiracy in violation of 18 U.S.C. § 1362(d).
 On October 29, 1998, Phelan pled guilty to extortion. In a
letter dated November 19, 1998, the Pension Fund notified Phelan that
pursuant to section 3-147 of the Illinois Pension Code (Pension Code)
(40 ILCS 5/3-147 (West 1996)) his pension benefits would be subject to
termination upon his conviction of any felony relating to, or arising
out of or in connection with his service as a LaGrange Park police
officer. The letter also informed Phelan that he could waive his
right to a hearing and apply for a refund of monies he had contributed
less the amount of benefits he had previously received. In a follow-
up letter, the Pension Fund informed Phelan that he was entitled to a
refund of his pension contributions in the amount of $62,651.58. The
Pension Fund arrived at the figure of $62,651.58 by multiplying the
number of monthly pension payments Phelan had received, 11, with the
monthly amount he had paid out of his contributions, $216.78, and
deducting this total (11 x $216.78 = $2,384.58) from his total
contributions to the fund ($65,036.16 - $2,384.58 = $62,651.58).
 On February 24, 2000, Phelan was sentenced to twelve months in
federal prison, he was fined $5,000 and was ordered to pay $3,000 in
restitution.
 On May 15, 2000, the Board of Trustees of the Village of
LaGrange Park Police Pension Fund (Board) conducted an administrative
hearing to determine if Phelan's felony conviction would require him
to forfeit his retirement pension benefits. The Board would also
determine if Phelan's felony conviction would disqualify him from
obtaining a refund of his pension contributions.
 At the hearing, Phelan conceded that his felony conviction
extinguished any right he had to future retirement benefits, but he
argued that he was entitled to a refund of the contributions he made
to the police pension fund during his 30 years of service with the
LaGrange Park Police Department. Phelan requested a refund of his
pension contributions, which totaled approximately $65,000.00.
 At the close of the hearing, the Board voted to terminate
Phelan's retirement pension and to deny his request for a refund of
his pension contributions. At the time the Board terminated Phelan's
retirement pension he had received $80,830 in retirement benefits from
December, 1997 through May, 2000.
 On July 18, 2000, the Board issued its written decision
regarding this matter. First, the Board held that the plain language
of section 3-124 of the Pension Code, entitled "Refund," (40 ILCS 5/3-
124 (West)) did not authorize a refund to police officers with more
than 20 years of service. (R.1, C.12) The Board therefore reasoned
that pursuant to section 3-124, Phelan was not entitled to a refund of
his pension contributions because he retired with over 20 years of
service as a police officer. Second, the Board held that public
policy precluded a police officer from benefitting from his own
misconduct and, therefore, public policy mandated denial of a refund
of Phelan's pension contributions.
 On August 10, 2000, Phelan filed a complaint for administrative
review in the circuit court of Cook County seeking a reversal of the
Board's decision denying his request for a refund. On February 28,
2001, the circuit court found that the Board's decision was not
contrary to the manifest weight of the evidence and affirmed the
Board's order denying Phelan's request for a refund of his pension
contributions.
 On appeal, Phelan contends that: (1) the Board erred in its
interpretation that section 3-124 of the Pension Code disqualified him
from receiving a refund of his pension contributions; and (2) the
Board incorrectly determined that granting him a refund of his pension
contributions would violate public policy. For the reasons that
follow, we reverse the Board's decision that section 3-124 of the
Pension Code disqualified Phelan from receiving a refund of his
pension contributions, and we find that the Board incorrectly
determined that granting Phelan a refund of his pension contributions
would violate public policy. However, we also find that under the
circumstances of this case, Phelan is not entitled to a refund of his
pension contributions because the amount of pension benefits he has
previously received ($80,830) exceeds the amount of his total
contributions ($65,036.16).
 ANALYSIS
 Standard of review
 In reviewing a final decision under the Administrative Review
Law (735 ILCS 5/3-101 et seq. (West 1996)) this court reviews the
administrative agency's decision and not the circuit court's decision.
XL Disposal Corporation v. Zehnder, 304 Ill. App. 3d 202, 709 N.E.2d
293 (1999). Upon review, an agency's findings of fact are held to be
prima facie true and correct, and will not be disturbed unless they
are against the manifest weight of the evidence. Launius v. Board of
Fire and Police Commissioners of Des Plaines, 151 Ill. 2d 419, 603
N.E.2d 477 (1992).
 An agency's conclusions of law and construction of a statute,
however, are reviewed de novo. Envirite Corp. v. Illinois
Environmental Protection Agency, 158 Ill.2d 210, 632 N.E.2d 1035
(1994); Lucas v. Lakin, 175 Ill.2d 166, 171, 676 N.E.2d 637 (1997).
Despite the de novo nature of the review, this court affords
substantial deference to an agency's interpretation of a statute which
the agency administers, because of the experience and expertise the
agency has gained through enforcing the statute. DiFiore v. Ret. Bd.
of Policemen's Annuity, 313 Ill. App. 3d 546, 729 N.E.2d 878 (2000);
Stillo v. State Retirement Systems, 305 Ill. App.3d 1003, 714 N.E.2d
11 (1999).
 In the instant case, the Board determined that the plain
language of section 3-124 of the Pension Code, entitled "Refund," (40
ILCS 5/3-124 (West)) disqualified Phelan from receiving a refund of
his pension contributions because he retired from the LaGrange Park
Police Department with over 20 years of service to the department.
Section 3-124 of the Pension Code provides in relevant part:
 "A police officer who is separated from police
 service after June 30, 1953 with less than 20 years of
 service is entitled to a refund upon request of all
 contributions made by the officer to the police pension
 fund." 40 ILCS 5/3-124 (West 1998).
 Phelan contends however, that the Board erred in interpreting
that section 3-124 of the Pension Code disqualified him from receiving
a refund of his pension contributions. Phelan maintains that when the
Board reviewed his application for a refund, the circumstances of his
case obligated the Board to consider statutory provisions other than
section 3-124. Specifically, Phelan contends that the Board, in making
its decision, erred by failing to consider the language of section 3-
147 of the Pension Code, entitled "Felony Conviction," (40 ILCS 5/3-
147 (West 1998)) which provides in relevant part:
 "None of the benefits provided in this Article shall
 be paid to any person who is convicted of any felony
 relating to or arising out of or in connection with his or
 her service as a police officer.
 This Section shall not impair any contract or vested
 right acquired prior to July 11, 1955 under any law
 continued in this Article, nor preclude the right to a
 refund." 40 ILCS 5/3-147 (West 1998).
 Phelan claims that section 3-147, unlike section 3-124,
addresses the issue of a request for a refund motivated by a felony
conviction. Phelan contends that the Board erred in interpreting that
section 3-124 of the Pension Code disqualified him from receiving a
refund of his pension contributions since the second paragraph of
section 3-147 of the Pension Code expressly provides that a felony
conviction does not preclude the right to a refund. Phelan is
correct.
 When construing the meaning of a disputed statute, this court's
primary objective is to ascertain and give effect to the intent of the
legislature. People v. Zaremba, 158 Ill. 2d 36, 40, 630 N.E.2d 797
(1994). Legislative intent is best determined by examining statutory
language, which must be given its plain and ordinary meaning. McTigue
v. Personnel Bd., 299 Ill. App. 3d 579, 701 N.E.2d 135 (1998). Courts
must look first to the language of the statute, and where that
language is unambiguous, the statute must be enforced as enacted
without resort to other aids of construction. County of DuPage v.
Graham, Anderson, Probst & White, Inc., 109 Ill. 2d 143, 151, 485
N.E.2d 1076 (1985). In construing the Policeman's Pension Fund Act,
this court has a duty to enforce the pension law as enacted, according
to its plain and unmistakable provisions. Edwards v. Board of Trustees
of Police Pension Fund, 22 Ill. App. 3d 260, 317 N.E.2d 364 (1974),
affirmed Edwards v. Board of Trustees of Police Pension Fund, 61
Ill.2d 330, 335 N.E.2d 440 (1975). In addition, the language of
police pension statutes should be liberally construed in favor of the
rights of the pensioner. Greenan v. Board of Trustees of Police
Pension Fund of Springfield, 213 Ill. App. 3d 179, 573 N.E.2d 825
(1991); Jahn v. City of Woodstock, 99 Ill. App. 3d 206, 425 N.E.2d 490
(1981).
 Section 3-124 of the Pension Code authorizes a pension board to
issue a refund of pension contributions not only to police officers
who are separated from police service with less than 20 years of
service, but also to officers who die with less than 10 years of
police service. See Donnells v. Woodridge Police Pension Bd., 159 Ill.
App. 3d 735, 512 N.E.2d 1082 (1987). Thus, section 3-124 enables a
police officer or the officer's surviving spouse or heirs to obtain a
refund of all contributions the police officer made to the pension
fund, in those situations where the officer had not yet received
pension benefits because he or she was either separated from police
service with less than 20 years of service or had died with less than
10 years of police service. Consequently, section 3-124 does not apply
in the present case because at the time Phelan requested a refund of
his pension contributions he had already received pension benefits for
approximately 2½ years before his benefits were terminated by his
felony conviction. In addition, section 3-124 of the Pension Code has
no application to the set of facts in this case, because it does not
address a situation where a pensioner requests a refund of
contributions upon termination of benefits due to the pensioner's
felony conviction.
 On the other hand, section 3-147 of the Pension Code
specifically applies in a situation where a pensioner requests a
refund of contributions after his or her retirement benefits have been
terminated due to a felony conviction. The language of section 3-147,
when applied to the facts in this case, is more specific and,
therefore, controls over the general language contained in section 3-
124. See People v. Villarreal, 152 Ill. 2d 368, 604 N.E.2d 923 (1992)
(stating that it is a fundamental rule of statutory construction that
where there are two statutory provisions, one of which is general and
the other specific, which both relate to the same subject, the
specific provision controls and should be applied). Again, section 3-
147 of the Pension Code entitled "Felony Conviction," provides in
relevant part:
 "This Section shall not impair any contract or vested
 right acquired prior to July 11, 1955 under any law
 continued in this Article, nor preclude the right to a
 refund." (Emphasis added) 40 ILCS 5/3-147 (West 1998).
 This language specifically provides that a pensioner's
forfeiture of pension benefits by virtue of a felony conviction will
not preclude the pensioner from receiving a refund of his or her
pension contributions.
 The Board cites to Edwards v. Board of Trustees of Police
Pension Fund, 22 Ill. App. 3d 260, 317 N.E.2d 364 (1974), in support
of its contention that the plain language of section 3-124 of Pension
Code disqualified Phelan from receiving a refund of his pension
contributions. However, Edwards does not support the Boards'
contention because Edwards did not discuss section 3-147 of the
Pension Code and the case did not involve a pensioner's request for a
refund of his or her contributions in a situation where the
pensioner's benefits were terminated due to a felony conviction.
 Furthermore, if this court were to adopt the Board's
interpretation of section 3-124, then a police officer convicted of a
felony who had less than 20 years of service would be entitled to a
refund, while an officer convicted of the same felony having 20 or
more years of service would be ineligible for a refund. Section 3-124
of the Pension Code should not be interpreted in such a way that it
would be possible for a police officer convicted of a felony with 19
years of service is entitled to a refund, while a second officer
convicted of the same felony but with one extra year of service (20
years) is disqualified from receiving a refund. We do not believe
that the drafters of section 3-124 intended this section of the
Pension Code to be construed in such a manner, since such a
construction would be neither logical, useful or reasonable. See
Jarvis v. South Oak Dodge, Inc., 319 Ill. App. 3d 509, 747 N.E.2d 383
(2001) (A statute should be given an interpretation that is reasonable
and that will not produce absurd or unjust results that the
legislature could not have intended).
 Based on the foregoing analysis and case law, we hold that the
Board erred in interpreting that the twenty-year limiting provision in
section 3-124 of the Pension Code disqualified Phelan from receiving a
refund of his pension contributions where
the plain language of section 3-147 of the Pension Code specifically
provides that a pensioner's felony conviction does not preclude the
pensioner from receiving a refund of his or her contributions.
 Even though we find that under section 3-147 of the Pension
Code, a pensioner's felony conviction does not preclude the pensioner
from receiving a refund of his or her pension contributions, in the
instant case Phelan is not entitled to a refund of his pension
contributions because the amount of pension benefits he previously
received ($80,830) exceeded the amount of his total contributions
($65,036.16).
 This court recently issued an opinion in the case of Shields v.
The Judges' Retirement System of Illinois and The Board of Trustees of
the Judges' Retirement System of Illinois, No. 1-00-4133, in which a
former Cook County circuit court judge, whose benefits had been
terminated as a result of his felony conviction, sought a refund of
all the contributions he had made to the Judges Retirement System of
Illinois. The former judge argued that the retirement benefits he
received prior to his conviction should not have been deducted from
his contributions in calculating the total amount of his refund. The
court in Shields decided not to adopt the former judge's argument and
instead found that the pension board correctly determined that the
former judge was not entitled to a refund of all of his contributions,
but was rather entitled to a refund of his contributions ($113,222.04)
less benefits paid to him prior to his conviction ($75,348.77), for a
total refund of $37,873.27.
 In Shields, the pension board determined that subsection (c)
rather than subsection (a) of section 18-129 of the Judges Retirement
System of Illinois (System) (40 ILCS 5/18-129 (a), (c) (West 1992)),
applied to the calculation of a refund for an annuitant whose pension
benefits were terminated as a result of a felony conviction. The
pension board found that subsection (a) of section 18-129 of the
System provided for a full refund of contributions in a situation
where a judge had not yet begun to receive retirement benefits.
Therefore, the pension board reasoned that subsection (a) of section
18-129 was inapplicable in Shields because the former judge had
received retirement benefits for over one year before his benefits
were terminated due to his felony conviction.
 Instead, the pension board in Shields found that subsection (c)
of section 18-129 of the System was more analogous to the facts in
Shields because subsection (c) dealt with a request for a refund of
contributions in a situation where an annuitant who had previously
received retirement benefits had those benefits terminated due to the
annuitant's death, and the facts in Shields dealt with a request for a
refund of contributions where the annuitant had previously received
retirement benefits and those benefits were terminated due to the
annuitant's felony conviction. The pension board reasoned that even
though the former judge's retirement benefits were terminated due to
his felony conviction rather than his death, subsection (c) rather
than (a) was more closely analogous to the factual situation in
Shields because at the time the former judge's benefits were
terminated he was actually an annuitant and had previously received
retirement benefits.
 The Shields's pension board found that pursuant to section 18-
129(c) where there are no beneficiaries eligible to receive a
survivor's annuity, a deceased annuitant's estate would only be
entitled to a refund of contributions to the extant that those
contributions exceeded the retirement benefits previously paid. Based
on this finding, the pension board reasoned that under section 18-
129(c) the former judge was not entitled to a refund of all of his
contributions, but was rather entitled to a refund of his
contributions less the amount of benefits paid to him prior to his
conviction. The pension board determined that if it adopted the line
of reasoning espoused by the former judge, then an annuitant whose
pension benefits were terminated by a felony conviction would obtain
more in benefits than an annuitant whose benefits were terminated by
death, because the former annuitant would be entitled to a full refund
of all contributions even if the retirement benefits received by the
annuitant exceeded the contributions made by that annuitant.
Consequently, the court in Shields found that the pension board
correctly determined that the former judge was not entitled to a
refund of all of his contributions, but was rather entitled to a
refund of his contributions less benefits paid to him prior to his
conviction.
 The reasoning the pension board and appellate court used in
Shields applies equally well in the present case. As previously
stated, the amount of pension benefits Phelan has already received
($80,830) exceeds the amount of his total contributions ($65,036.16).
Consequently, if this court allowed Phelan to obtain a refund of his
contributions under these circumstances, then a police officer who
received a refund under section 3-147 would receive more benefits than
a police officer who received a refund under section 3-124, because an
officer whose benefits were terminated by a felony conviction would be
entitled to all of the benefits he received prior to conviction and to
a complete refund as well, even if the pre-conviction benefits the
officer received far exceeded his or her contributions. Section 3-147
of the Pension Code should not be interpreted to benefit a pensioner
whose benefits are terminated by a felony conviction over a police
officer whose benefits are terminated by separation or death.
 Therefore, this court finds that pursuant to section 3-147 of
the Pension Code, a pensioner whose retirement benefits are terminated
due to a felony conviction is entitled to a refund of pension
contributions only to the extent that those contributions exceed
benefits already paid. Consequently, in the instant case, Phelan is
not entitled to a refund of his pension contributions because the
amount of pension benefits he has previously received ($80,830)
exceeds the amount of his total contributions ($65,036.16).
 Phelan next contends that the Board incorrectly concluded that
in light of his receipt of $80,830 in retirement benefits, granting
him a refund of his pension contributions would violate public policy.
 The public policy of the State of Illinois is reflected in its
constitution, statutes and judicial decisions. O'Hara v. Ahlgren,
Blumenfeld & Kempster, 127 Ill.2d 333, 341, 537 N.E.2d 730 (1989).
While the term "public policy" lacks a precise definition, it may be
stated generally as a legal principle that no one may lawfully do that
which has a tendency to injure the public welfare. Holstein v.
Grossman, 246 Ill. App. 3d 719, 725-26, 616 N.E.2d 1224 (1993).
 The Illinois Supreme Court has stated that a primary purpose of
the pension forfeiture statute is to "discourage official malfeasance
by denying the public servant convicted of unfaithfulness to his trust
the retirement benefits to which he otherwise would have been
entitled." Kerner v. State Employees' Retirement System, 72 Ill. 2d
507, 382 N.E.2d 243 (1978). This court has no doubt that breach of
the public trust, rising to the level of a felony, is a serious
offense and ought to be punished. In the instant case, the record
reveals that Phelan has been punished. Phelan was sentenced to twelve
months in federal prison, he was fined $5,000, he was ordered to pay
$3,000 in restitution, and pursuant to section 3-147 of the Pension
Code he forfeited his right to future pension benefits.
 Public policy is embodied in the provisions of section 3-147 of
the Pension Code, which provide that a pensioner's felony conviction
extinguishes the pensioner's right to future benefits. However,
section 3-147 also expressly states that a pensioner's felony
conviction does not preclude the pensioner's entitlement to a refund
of pension contributions. In Illinois it is well settled that public
employee pensions are a matter of contractual right. See Moore v.
Board of Trustees, 157 Ill. App. 3d 158, 510 N.E.2d 87 (1987). In
addition, the legislature may take action which is directed toward
deterring felonious conduct in public employment by affecting the
pension rights of public employees who have been convicted of a work
related felony. Kraus v. Board of Trustees of Police Pension Fund of
Niles, 72 Ill. App. 3d 833, 850, 390 N.E.2d 1281 (1979). The drafters
of section 3-147 of the Pension Code chose to discourage official
malfeasance by terminating the future pension benefits of a pensioner
convicted of a felony, while at the same time providing that a
pensioner's felony conviction does not preclude him or her from
obtaining a refund of pension contributions. Consequently, Illinois
public policy is not inconsistent with a police officer obtaining a
refund of contributions under section 3-147, to the extent that those
contributions exceed benefits already paid.
 Accordingly, for the reasons set forth above, we reverse the
trial court's judgment affirming the Board's decision that section 3-
124 of the Pension Code disqualified Phelan from receiving a refund of
his pension contributions.
 Reversed.
 HALL, P.J., with CERDA and SOUTH, J.J., concurring.